W. M. SIMS, AND WIFE CAROL C. SIMS, PLAINTIFFS v. OAKWOOD MO-
BILE HOMES, INC. AND VIRGINIA HOMES MANUFACTURING
CORPORATION, DEFENDANTS AND OAKWOOD MOBILE HOMES,
INC., THIRD-PARTY PLAINTIFF v. VIRGINIA HOMES MANUFAC-
TURING CORPORATION, THIRD-PARTY DEFENDANT

No. 7510SC288

(Filed 3 September 1975)

Negligence § 2— construction and installation of mobile home — negligence
action

Plaintiffs' evidence was sufficient for the jury in an action against
a mobile home manufacturer based on negligence in the construction
and installation of a mobile home which the manufacturer undertook
to construct in accordance with the plaintiffs' specifications, but plain-
tiffs' evidence was insufficient for the jury in an action against a
mobile home dealer based on negligent construction and installation.

APPEAL by plaintiffs from *Bailey, Judge.* Judgment entered
in 73CvS2782 on 15 November 1974, and judgment entered in
73CvS2781 on 22 November 1974. Heard in the Court of Appeals
10 June 1975.

Plaintiffs brought suit against Virginia Homes Manufactur-
ing Corporation (Virginia) for breach of contract and negli-
gence in the construction, delivery and manufacture of a mobile
home. Plaintiffs also sued Oakwood Mobile Homes, Inc., (Oak-
wood) for negligence in the construction, delivery and manufac-
ture of the same mobile home. The actions were consolidated for
trial.

Oakwood filed a third-party complaint against Virginia
seeking indemnification if Oakwood should be found liable in
the primary action. Prior to trial, plaintiffs voluntarily dis-
missed their contract action against Virginia and proceeded to
trial against both defendants for negligence.

Plaintiffs' evidence tends to show the following. W. M.
Sims lived in a conventional home in Raleigh but was interested
in purchasing a double-wide mobile home. He called on Odell
Hamm, the manager at Oakwood, and was told that Oakwood
handled a double-wide mobile home called "Norris." However,
there were none on the lot and the "Norris" factory had closed
for a few months.

Arrangements were made for Hamm and plaintiffs to visit
the factory of another mobile home manufacturer—Virginia.

Hamm drove plantiffs to Boydton, Virginia, where they toured the factory and Mr. Sims was introduced to a Mr. Thompson. While there, some concern was expressed by Mr. Sims about the axles, wheels, and hitches on the mobile homes, and he was told that these would be removed when the mobile home was set up. Sims then presented Mr. Hamm a rough drawing of the floor plan which called for a 24′ x 60′ home and a list of extra specifications. He also requested 2″x8″ floor joists instead of the standard 2″x6″ floor joists used in double-wide units. Mr. Hamm took the information to someone in the factory and returned later with a price. Plaintiffs agreed to buy subject to the condition that they not be required to pay until they had sold their home in Raleigh.

Subsequently, plaintiff told Mr. Hamm that they had found a buyer for their home but that they wanted the mobile home to be 55 feet long instead of 60 feet. Mr. Hamm later informed them that the modifications could be made and a 24′x55′ mobile home was ordered at a price of $12,982.00. This price included delivery and installation. Plaintiffs received plans for the foundation from Mr. Hamm and were told that the foundation was not for support but only for appearance purposes. Virginia furnished the foundation plans, but it was plaintiffs' responsibility to construct the foundation.

After completion of the foundation, plaintiffs waited until they received word from Mr. Hamm that the mobile home was in transit to their lot. It arrived in two sections, and, contrary to the instructions of Mr. Sims, workers from Virginia began putting the sections together on the foundation. A metal frame or chassis beneath each section was removed and the sections were placed on the foundation. The two sections were about one-half inch apart, and in order to correct this a truck was used to bump them together. No one from Oakwood was present to supervise installation.

Being immediately dissatisfied with the mobile home, plaintiffs made a list of flaws. Workers from Virginia returned and corrected some of them, however, plaintiffs found others, some of which were caused by workers while making the corrections. On different occasions additional work was done on the mobile home, but plaintiffs remained dissatisfied. W. M. Sims testified at length concerning the flaws in his mobile home and its diminished value.

M. W. Cooper, who is in the "mobile home transport and trailer park business," testified that he had never seen a double-wide mobile home with the chassis or metal frame removed from beneath it and that if the frame had remained under the mobile home in question then it would have provided adequate support. Insufficient support, according to Cooper, caused a separation of some of its walls.

John George Raif, a mobile home repairman, testified that he saw numerous defects and attempted to estimate the cost of repairs but didn't know where to begin. Raif looked under the mobile home and did not see a metal frame. He, too, had never seen a mobile home from which the metal frame had been removed.

Clarence P. Jones, who was employed by plaintiffs to construct the foundation, testified that he built the foundation in accordance with the plans. Except in the present instance, he had never built a foundation for a mobile home which had no steel frame.

Plaintiff Carol Sims testifed concerning some of the flaws in the mobile home. According to this witness, plaintiffs ordered a mobile home with 2″x8″ floor joists but no mention was made concerning the steel frame.

At the close of plaintiffs' evidence the trial judge directed verdict in favor of both defendants stating that there was not sufficient evidence of negligence.

Plaintiffs appealed.

*Kimzey, Mackie & Smith, by James M. Kimzey and Stephen T. Smith, for plaintiff appellants.*

*Teague, Johnson, Patterson, Dilthey & Clay, by Robert W. Sumner, for defendant appellee Oakwood Mobile Homes, Inc.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by Wright T. Dixon, Jr., John N. Fountain, and Kenneth Wooten, Jr., for defendant appellee Virginia Homes Manufacturing Corporation.*

MARTIN, Judge.

Instead of proceeding against defendants for breach of contract or warranty, plaintiffs seek to recover in tort alleging that defendants negligently constructed and installed their mobile home.

Negligent performance of a contract may constitute a tort as well as a breach of contract, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done. *Pinnix v. Toomey*, 242 N.C. 358, 87 S.E. 2d 893 (1955). See also *Insurance Co. v. Sprinkler Co.*, 266 N.C. 134, 146 S.E. 2d 53 (1966) and *Toone v. Adams*, 262 N.C. 403, 137 S.E. 2d 132 (1964).

The present case is unusual in that plaintiffs' injuries are confined to the subject matter of the sales contract—i.e. the mobile home. There has been no injury to the person or any property of plaintiffs other than the mobile home which is, according to plaintiffs' evidence, worth much less than what they paid for it. Nor does it appear that the mobile home, as constructed and installed, is capable of causing any harm to persons or other property as is ordinarily found in negligence actions. The manufacturer's liability in tort for mere loss on the bargain has been a troublesome question. Prosser, Handbook of The Law of Torts, § 101, pp. 665-7 (4th ed. 1971). Here, however, the manufacturer (Virginia) assumed responsibility for more than the safety of its product. Virginia undertook to construct the mobile home in accordance with plaintiffs' specifications. In addition, Virginia furnished the foundation plans for the mobile home and undertook to install the home on said foundation.

Viewing the evidence in the light most favorable to plaintiffs, there is sufficient evidence of negligence on the part of Virginia in the construction and installation of the mobile home which would require submission of the issue to the jury.

As for Oakwood, we affirm the directed verdict in its favor. There is no evidence of negligence on its part, nor do we find any relationship between Oakwood and Virginia as would render Oakwood answerable for the negligence of Virginia.

Reversed in part.

Affirmed in part.

Judges BRITT and HEDRICK concur.