SPARTAN LEASING INC. OF NORTH CAROLINA, PLAINTIFF v. BURNETT
POLLARD, D/B/A BEAVER DAM LOGGING, AND LONG LEAF WOOD PROD-
UCTS, INC., DEFENDANTS

No. 9013SC359

(Filed 5 February 1991)

**1. Fraud § 12.1 (NCI3d)— signature on guaranty—allegedly ob-
tained by fraud—summary judgment for plaintiff**

Summary judgment was properly granted for plaintiff on
defendant Long Leaf's claim that its president's signature was
obtained on a guaranty of a lease of a logging skidder by
fraud where neither defendant Pollard (the lessee) nor defend-
ant Long Leaf's president (Hutchison) alleged definite and
specific misrepresentations by plaintiff's customer service
representative and, even assuming misrepresentation, the facts
are insufficient as a matter of law to constitute reasonable
reliance.

**Am Jur 2d, Fraud and Deceit §§ 268-270; Guaranty § 57.**

**2. Guaranty § 1 (NCI3d)— addendum letter—modification of
lease—not a guaranty**

In an action to enforce a guaranty of a lease for a logging
skidder, an addendum letter was a modification of the original
lease and not a guaranty. Summary judgment for plaintiff
lessor was proper because there was no ambiguity in the terms
of the letter.

**Am Jur 2d, Guaranty §§ 79, 80.**

**3. Guaranty § 2 (NCI3d)— guaranty of equipment lease—
counterclaim for negligent repair**

The trial court erred in an action to hold a guarantor
liable on the lease of a logging skidder by granting summary
judgment for plaintiff-lessor on the issue of the guarantor's
entitlement to a setoff for plaintiff's negligent repair of the
skidder. The claim was for damages due to negligent repair,
which did not sound in breach of contract or breach of warran-
ty, did not arise from the guaranty agreement, and was an
independent cause of action belonging to the lessee, defendant
Pollard. Since Pollard and the guarantor, Long Leaf, were

SPARTAN LEASING v. POLLARD

[101 N.C. App. 450 (1991)]

sued jointly, Long Leaf could assert by setoff damages due to plaintiff's negligent repair of the skidder.

**Am Jur 2d, Bailments §§ 156, 161.**

4. **Rules of Civil Procedure § 55 (NCI3d)— entry of default—no default judgment—setoff claim allowed**

Defendant guarantor was not prevented from asserting as a setoff a claim for plaintiff lessor's negligent repair of the leased equipment where an entry of default was made by the clerk against the lessee, but no default judgment was entered against either defendant. The effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint and is prohibited from defending on the merits of the case. Summary judgment for plaintiff was improperly granted. N.C.G.S. § 1A-1, Rule 8(d), N.C.G.S. § 1A-1, Rules 55(a) and (d).

**Am Jur 2d, Judgments §§ 1155, 1156.**

5. **Unfair Competition § 1 (NCI3d)— signature on guaranty—not obtained through unfair and deceptive trade practice**

The trial court properly granted summary judgment for plaintiff on a guarantor's claim for an unfair and deceptive trade practice arising from the signing of the guaranty where defendant did not forecast sufficient evidence by which a jury could find that the statements made by plaintiff as alleged by defendant could have created the likelihood of deception.

**Am Jur 2d, Guaranty § 57; Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 696, 735.**

Judge PARKER concurs in the result.

APPEAL by defendant Long Leaf Wood Products, Inc. from judgment entered 27 November 1989 by *Judge Giles R. Clark* in BRUNSWICK County Superior Court. Heard in the Court of Appeals 25 October 1990.

*Murchison, Taylor, Kendrick, Gibson & Davenport, by Reid G. Hinson, and Grier and Grier, P.A., by Richard C. Belthoff, Jr., for plaintiff-appellee.*

*Stevens, McGhee, Morgan, Lennon & O'Quinn, by Alan E. Toll, for defendant-appellant.*

SPARTAN LEASING v. POLLARD

[101 N.C. App. 450 (1991)]

JOHNSON, Judge.

This is an action by plaintiff-appellee Spartan Leasing, Inc. ("Spartan"), lessor, to hold defendant-appellant Long Leaf Wood Products, Inc. ("Long Leaf"), liable as guarantor on the lease of a "logging skidder" by defendant-below Burnett Pollard, doing business as Beaver Dam Logging ("Pollard"). The action was filed in Mecklenburg County on 22 November 1988. Defendant Pollard filed no answer and an entry of default was entered against him on 13 February 1989. Defendant Long Leaf answered, asserting defenses and counterclaims against Spartan and a cross-claim against Pollard. Long Leaf moved for change of venue and the case was transferred to Brunswick County for the convenience of the witnesses. Spartan moved for summary judgment. Defendant Long Leaf appeals from the granting of summary judgment in favor of Spartan on all of Spartan's claims against both defendants and against Long Leaf's counterclaims. Defendant Pollard is not a party to this appeal.

The forecast of evidence, as taken from the verified pleadings, answers to interrogatories and affidavits of the parties and witnesses, would tend to show the following:

During the summer of 1987, Payton Warren, Customer Sales Representative for Spartan, contacted Steve Hutchison, president of Long Leaf, about the possibility of Long Leaf purchasing a skidder from Spartan. Hutchison informed Warren that Long Leaf was not interested in purchasing a skidder but suggested that Spartan contact Burnett Pollard, who was doing contract work for Long Leaf at the time. During the negotiations with Pollard, Spartan determined that they would not lease a skidder to Pollard unless Hutchison, individually, and as president of Long Leaf, unconditionally guaranteed the equipment lease. Spartan alleges that Hutchison agreed to obligate Long Leaf as guarantor but would not do so in his individual capacity. Spartan further alleges that they finally agreed that Hutchison's guarantee as president of Long Leaf would be sufficient. Hutchison alleges that he refused to guarantee Pollard's obligation in either his individual capacity or as president of Long Leaf. He did, however, agree to pay Pollard's lease payment directly to Spartan from monies owed Pollard by Long Leaf, with Pollard's permission. On 14 July 1987, Pollard signed a 36-month lease of the skidder. That same day, Pollard and Hutchison executed a "Guaranty" which neither of them read before signing.

The skidder broke down in October 1987. Pollard was not working at that time and could not pay the repair cost. Spartan arranged to have the skidder fixed for a cost of $6,500 and thereafter presented an "Addendum Letter" which both Pollard and Hutchison signed. The letter was an agreement that the amount of the monthly payments was increased to $2,750 per month to include the repair cost plus interest. Pollard signed on the line marked "Lessee." Hutchison signed on the line marked "Guarantor: Long Leaf Wood Products, Inc., Steve Hutchison, President."

In January 1988, Pollard failed to make payment on the lease. On 1 July 1988, Spartan accelerated the debt and repossessed the skidder. Spartan bought the skidder for $40,000 at public auction on 24 August 1988 and then brought suit against Pollard and Long Leaf to collect the deficiency. Long Leaf answered and set up various defenses. Pollard filed no answer and an entry of default was entered against him on 14 February 1989 by the clerk of superior court of Mecklenburg County. Pollard's motion to set aside the entry of default was denied by Judge Clark on 27 November 1989 and on that same day Judge Clark entered summary judgment for Spartan.

On appeal, Long Leaf contends that the trial court: (1) erred in granting summary judgment against Long Leaf on its defense that its signature on the guaranty was obtained by trick or fraud, (2) erred in granting summary judgment on the issue of whether Long Leaf is entitled to a setoff due to the negligent repair of the skidder, and (3) erred in dismissing Long Leaf's counterclaim for unfair and deceptive trade practices.

I.

[1] First, defendant contends that the trial court erred in granting summary judgment in favor of Spartan on Long Leaf's claim that Hutchison's signature on the guaranty was obtained by trick or fraud.

Defendant's evidence consists of affidavits by Hutchison and Pollard. In his affidavit Hutchison states:

On July 14th Pollard said it was O.K. for me to pay his money directly to Spartan Leasing and [Warren] said that his company wanted me to sign a paper indicating Pollard had agreed to [Long Leaf] sending the payments directly to Spartan. It was then that [Warren] produced a paper. He said his Company

required this paper work and asked Pollard and I [sic] to sign it. It was signed on the hood of my truck. . . [Warren] led me to believe that I was signing an agreement to send payments directly to Spartan on behalf of Pollard.

Pollard stated in his affidavit:

At [Warren's] request, both Steve Hutchison and myself signed a document on the hood of Steve's car as we left the work site in Leland, North Carolina. At the time we signed the document, [Warren] indicated that this was "paperwork the Company required" and told both Steve and myself it was to show that I agreed that he could deduct the payments from my payroll and pay them directly to Spartan.

In fact, the document signed that day was an unconditional guaranty on a single typewritten page with the word "GUARAN-TY" printed prominently at its top. Hutchison signed his name on an empty line marked "_____ , President." The words "Signature of Guarantor; Long Leaf Wood Products, Inc." appeared under the line. Another line marked "Signature of Guarantor: Steven M. Hutchison" was left blank. Neither Pollard nor Hutchison received a copy of the paper they signed.

The granting of a summary judgment motion is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. G.S. § 1A-1, Rule 56. Defendant contends that the trial court's granting of summary judgment on their defense of fraud was improper because there remained genuine issues of material fact to be resolved, namely whether Warren made a factual misrepresentation to Hutchison and whether Hutchison reasonably relied on it. We disagree.

The essential elements of fraud are:

(1) that defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the

SPARTAN LEASING v. POLLARD

[101 N.C. App. 450 (1991)]

representation, and acted upon it; and (6) that plaintiff thereby suffered injury.

*Cofield v. Griffin*, 238 N.C. 377, 379, 78 S.E.2d 131, 133 (1953).

As regards the first element, the fraudulent misrepresentation must be of a subsisting or ascertainable fact. *Berwer v. Insurance Co.*, 214 N.C. 554, 200 S.E. 1 (1938). Generally, the misrepresentation must be definite and specific, *New Bern v. White*, 251 N.C. 65, 110 S.E.2d 446 (1959), "but the specificity required depends upon the tendency of the statements to deceive under the circumstances." *Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 500 (1974). Defendant contends that prior to Hutchison signing the guaranty, Spartan had requested that he (Hutchison) guarantee the lease, both individually and as president of Long Leaf and that he had refused. Defendant's evidence further showed that Hutchison had, however, agreed to forward directly to Spartan as monthly lease payments, monies that Long Leaf owed Pollard. On 14 July, after Pollard gave Hutchison permission to forward his money directly to Spartan, Warren produced the guarantee and requested that Pollard and Hutchison sign it. Hutchison alleges: "[Warren] led me to believe that I was signing an agreement to send payments directly to Spartan on behalf of Pollard." Pollard, by affidavit, alleges that at the time they signed the document, Warren "indicated that this was 'paperwork the Company required' and told both [Hutchison] and myself it was to show that I agreed that he could deduct the payments from my payroll and pay them directly to Spartan." Neither Hutchison nor Pollard alleges definite and specific misrepresentations by Warren that the paper in question was an agreement to forward the lease payments.

We find, however, that we need not decide whether defendant's allegations as to misrepresentation are sufficient to survive a summary judgment motion because we find that defendant's forecast of evidence on the element of reasonable reliance is insufficient as a matter of law.

One to whom a definite representation has been made is entitled to rely on that representation if the representation is of a character to induce action by a person of ordinary prudence and is reasonably relied upon. *Fox v. Southern Appliances, Inc.*, 264 N.C. 267, 141 S.E.2d 522 (1965). A person signing a written instrument is under a duty to read it and ordinarily is charged with knowledge of its contents. *Mills v. Lynch*, 259 N.C. 359, 130

S.E.2d 541 (1963). These rules apply to the nonfiduciary relationship as exists between a creditor and a guarantor. *International Harvester Credit Corp. v. Bowman*, 69 N.C. App. 217, 316 S.E.2d 619, *disc. review denied*, 312 N.C. 493, 322 S.E.2d 556 (1984).

Even assuming, *arguendo*, that Warren misrepresented the guaranty to be an agreement for forwarding payments, Hutchison must have reasonably relied on that misrepresentation when he signed it. In *Johnson v. Lockman*, 41 N.C. App. 54, 254 S.E.2d 187, *disc. review denied*, 297 N.C. 610, 257 S.E.2d 436 (1979), plaintiff sought reinstatement of a health insurance policy which he canceled as a result of misrepresentation by the agent that plaintiff's injury was not covered by the policy. The misrepresentation consisted of a definite and specific statement by the agent that the injury was not covered, the fallacy of which could have been discovered by reading the policy. In reliance on that representation, plaintiff decided to cancel the policy. At the time that defendant's agent returned plaintiff's premiums, he obtained plaintiff's signature on a memo which stated that plaintiff requested the policy be canceled and that he understood that he had two other options besides canceling the policy. In fact, the other two options had not been explained to him. On handing the memo to plaintiff for signing, defendant's agent informed him that he, the agent, had an appointment and was already late. Plaintiff signed without reading the memo. This Court held that summary judgment was improper on these facts and that a jury question remained as to reasonable reliance.

We believe that the facts as pleaded by defendant Long Leaf are insufficient as a matter of law to constitute reasonable reliance. Defendant's evidence showed that the guaranty was presented to Hutchison on the job site during working hours. The relationship between Spartan and Hutchison was one of independent businessmen, not fiduciaries. The guaranty was a one page typewritten document with the word "GUARANTY" appearing in large bold letters across the top. The line on which Hutchison signed was identified by the typewritten words "Signature of Guarantor: President, Long Leaf, Inc." There are no allegations that Warren prevented Hutchison from reading the document (*Johnson*, 41 N.C. App. 54, 254 S.E.2d 187), that Hutchison was illiterate (*Mills*, 259 N.C. 359, 130 S.E.2d 541), or that Spartan and Hutchison stood in a fiduciary relationship (*International Harvester*, 69 N.C. App. 217, 316 S.E.2d 619). Summary judgment was proper on this issue.

SPARTAN LEASING v. POLLARD

[101 N.C. App. 450 (1991)]

[2]  Long Leaf next argues that the addendum letter supports its contention that there was no guaranty agreement and that it raises a jury question as to its terms and whether Spartan is estopped from raising the validity of the original guarantee. We disagree. The letter by its terms, modified the payments due under the 14 July 1987 lease and it incorporated all the terms and conditions contained in the original lease. It increased the monthly lease billing to $2,750 per month for 18 months until the full cost of the engine repair plus interest was satisfied. Both Pollard and Hutchison signed the addendum letter.

The addendum letter is not a guaranty but a modification of the original lease agreement. Hutchison signed the addendum letter making him a party to it and binding him to its terms. "Where the language of a contract is clear and unambiguous, the court is obligated to interpret the contract as written, and the court cannot look beyond the terms to see what the intentions of the parties might have been in making the agreement." *Renfro v. Meacham*, 50 N.C. App. 491, 496, 274 S.E.2d 377, 379 (1981).

Long Leaf also contends that the addendum letter is a new agreement to replace and supersede the previous guaranty. As stated above, we find that the letter is not a guaranty but a new contract which modifies the original lease agreement.

The guaranty provides in pertinent part:

[Each of the undersigned guarantors] severally and unconditionally guarantees to you that [Pollard] will fully and promptly and faithfully perform, pay and discharge all its present and future obligations to you . . . and we agree to pay all sums due and to become due to you from [Pollard].

This guaranty by its terms is a continuing guaranty. *See Novelty Co. v. Andrews*, 188 N.C. 59, 123 S.E. 314 (1924); *Amoco Oil Co. v. Griffin*, 78 N.C. App. 716, 338 S.E.2d 601, *disc. review denied*, 316 N.C. 374, 342 S.E.2d 889 (1986). In *Amoco Oil Co.*, the guarantor argued that a subsequent agreement between the creditor and the principal debtor extinguished the guarantor's liability under the guaranty. In the instant case, the subsequent agreement was signed by the debtor and the guarantor, himself.

Defendant relies on *Piedmont Bank and Trust Co. v. Stevenson*, 79 N.C. App. 236, 339 S.E.2d 49 (Judge Hedrick, dissenting), *aff'd*, 317 N.C. 330, 344 S.E.2d 788 (1986). In *Piedmont*, the language

of the guaranty was ambiguous as to whether it covered one loan only or covered future loans. Where that ambiguity existed on the face of the guaranty, this Court held that a jury question existed as to the intention of the parties. In the case *sub judice* there is no ambiguity in the terms of the letter nor are any alleged. We find that defendant's contention is without merit.

## II.

**[3]** Defendant next contends that the trial court erred in granting summary judgment on the issue of Long Leaf's entitlement to a setoff due to the negligent repair of the skidder. We agree.

In its verified answer, Long Leaf alleged as its 8th defense that the negligent repair of the skidder by a repairman sent by Spartan caused the machine to lock up and quit running, preventing Pollard from using the machine and making his payments, and decreasing the value of the machine. Hutchison specifically alleged in his affidavit that "when Spartan sent a man out to fix it, the man cracked the seal using a heat gun." Spartan alleges that the machine was repaired at a diesel repair shop and that either Pollard or Hutchison contracted to make the repairs.

The issue is whether a guarantor on an equipment lease can claim as setoff, in an action by a creditor against a guarantor and principal debtor, jointly, the negligent repair by the creditor of the leased equipment.

On appeal, Spartan does not argue that it is not responsible through its repairman for the repair of the skidder but that any duty of care runs to Pollard and thus is personal to him and is an independent cause of action not available to Long Leaf.

The general rule is that a guarantor may plead a claim or defense which is available to his principal. 38 C.J.S. *Guaranty* § 11 (1943 and Supp. 1990). But a guarantor may not avail himself of a defense which is personal to the debtor. 38 Am. Jur. 2d *Guaranty* § 52 (1968 and Supp. 1990). Nor may the guarantor assert a claim which constitutes an independent claim belonging to the debtor when the debtor is not joined in the action. *Chrysler Credit Corp. v. Rebhan*, 66 N.C. App. 255, 311 S.E.2d 606 (1984). In *dicta*, this Court in *Chrysler Credit Corp.* opined that where the principal debtor has been sued jointly with the guarantor, a claim in favor of the debtor may be set off by the guarantor against the demand of the creditor. *Id.* at 259, 311 S.E.2d at 609.

A guarantor may not counterclaim for damages against a creditor but may assert a claim only by way of setoff. In *Service Co. v. Sales Co.*, 259 N.C. 400, 131 S.E.2d 9 (1963), the plaintiff-creditor brought suit jointly against the debtor for breach of contract and against the guarantor on its guaranty. Both guarantor and debtor counterclaimed against the plaintiff for breach of warranty. With respect to the guarantor's counterclaim, our Supreme Court said:

> It is true that in an action by a creditor against the principal debtor and guarantor *jointly*, a claim existing in favor of the principal debtor may be set off by the guarantor against the demand of the creditor, unless the claim constitutes an independent cause of action in favor of the principal debtor. There is authority to the effect that a warranty does not inure to the guarantor. *But assuming that it does* in the instant case, Radiator [the guarantor] may insist on it only by way of setoff, and in so doing must stand in the shoes of Product Development [the principal debtor], and can realize no affirmative recovery against plaintiff.

*Id.* at 418, 131 S.E.2d at 23 (citations omitted) (emphasis added).

First, we note that Long Leaf's claim is for setoff for damages due to negligent repair. This claim does not sound in breach of contract or breach of warranty. "Negligent performance of a contract may constitute a tort as well as a breach of contract, the theory being that, accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done." *Sims v. Mobile Homes*, 27 N.C. App. 25, 28, 217 S.E.2d 737, 739, *cert. denied*, 288 N.C. 511, 219 S.E.2d 347 (1975); *see generally Ports Authority v. Roofing Co.*, 32 N.C. App. 400, 405, 232 S.E.2d 846, 850 (1977), *aff'd*, 294 N.C. 73, 240 S.E.2d 345 (1978) ("Negligence is the tortious breach of ordinary duty of due care, and this duty may arise as a consequence of contractual relationships.").

Pollard's claim for negligent repair does not arise out of the guarantee agreement between Spartan and Hutchison; it is therefore an independent cause of action belonging to Pollard. Since Pollard and Long Leaf were jointly sued in this action, Long Leaf may assert by way of setoff, any damages that might accrue to Pollard due to negligent repair of the skidder.

**[4]** Spartan contends that a default judgment was entered against Pollard and thus he, and Long Leaf, who "stands in [Pollard's] shoes," no longer have the right to raise negligent repair as a counterclaim. The record reveals, however, that an *entry of default* was made against Pollard by the clerk. *See* G.S. § 1A-1, Rule 55(a). Following the denial of his motion to set aside the default, G.S. § 1A-1, Rule 55(d), summary judgment was granted in favor of Spartan against both defendants, jointly and severally. A *default judgment* was never entered against either defendant.

When a defendant fails to timely answer a complaint, an entry of default may be made by the clerk on motion of the plaintiff. G.S. § 1A-1, Rule 55(a). The effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint, G.S. § 1A-1, Rule 8(d), and is prohibited from defending on the merits of the case. *Bell v. Martin*, 299 N.C. 715, 264 S.E.2d 101, *reh'g denied*, 300 N.C. 380, 267 S.E.2d 686 (1980); *Acceptance Corp. v. Samuels*, 11 N.C. App. 504, 181 S.E.2d 794 (1971); *Hasty v. Carpenter*, 51 N.C. App. 333, 276 S.E.2d 513 (1981). "If the default is established, the defendant has no further standing to contest the merits of plaintiff's right to recover. His only recourse is to show good cause for setting aside the default and, failing that, to contest the amount of the recovery." *Acceptance Corp.*, 11 N.C. App. at 509-10, 181 S.E.2d at 798, *quoting*, 3 Barron & Hoftzoff, *Fed. Prac. & Proc.* § 1216 (Wright ed.).

We hold that on the facts *sub judice*, Long Leaf may assert by way of setoff the claim of negligent repair which belongs to Pollard. Defendant is not prohibited as a matter of law from asserting this claim, its forecast of evidence was sufficient to establish that genuine issues of material fact exist as to this claim and therefore summary judgment was improperly granted.

### III.

**[5]** Finally, Long Leaf contends that summary judgment was improper on its claim of unfair and deceptive trade practice under G.S. § 75-1.1.

To prevail on a claim of unfair and deceptive trade practice a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to

SPARTAN LEASING v. POLLARD

[101 N.C. App. 450 (1991)]

his business. G.S. §§ 75-1.1 and 75-16. *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981). A practice is deceptive if it has the capacity or tendency to deceive the average consumer, but proof of actual deception is not required. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E.2d 610 (1980). Whether the practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. *Marshall*, 302 N.C. 539, 276 S.E.2d 397. The plaintiff need not show fraud, bad faith, deliberate acts of deception or actual deception, but must show that the acts had a tendency or capacity to mislead or created the likelihood of deception. *Chastain v. Wall*, 78 N.C. App. 350, 337 S.E.2d 150 (1985), *disc. review denied*, 316 N.C. 375, 342 S.E.2d 891 (1986).

We find that defendant has not forecast sufficient evidence by which a jury could find that the statements made by plaintiff as alleged by defendant could have created the likelihood of deception where plaintiff and defendant were independent businessmen, the one-page document was presented to the defendant on the job site during working hours, the guaranty at issue was clearly identified as a "GUARANTY" and the signature line also identified the signator as "Guarantor."

In conclusion: summary judgment was properly granted in favor of plaintiff on Long Leaf's defenses of fraud and unfair and deceptive trade practices. Summary judgment in favor of plaintiff was improper as to defendant's claim of setoff for negligent repair.

Affirmed in part, reversed in part.

Judge EAGLES concurs.

Judge PARKER concurs in the result.