CALABRIA, Judge.
Where appellants were estopped from challenging plaintiffs' membership status in the company, and no other genuine issues of material fact existed, the trial court did not err in granting summary judgment in favor of plaintiffs. Where the affidavit of a defendant in default served to challenge the complaint, the trial court did not abuse its discretion in granting plaintiffs' motion to strike the affidavit. Where a co-defendant was not the subject of plaintiffs' claims, and joined in plaintiffs' successful motion for summary judgment, that co-defendant was a "prevailing party" under statute, and the trial court did not abuse its discretion in awarding attorney's fees in favor of that co-defendant. Where appellants' answer, defenses, and counterclaims lacked any basis in fact or law, they failed to raise any justiciable issues, and the trial court did not abuse its discretion in awarding attorney's fees in favor of plaintiffs. We affirm the order of the trial court.
I. Factual and Procedural Background
On 24 November 2015, Claudia Holcombe ("Holcombe"), Tom Pelton ("Pelton"), Robert and Naomi Martin ("the Martins"), and Dos Aves, LLC ("Dos Aves"), a company owned in part by Holcombe and Pelton (collectively, "plaintiffs"), filed a verified complaint against Oak Island Aircraft Housing, LLC ("the Company"), 717, NC, LLC ("717"), its owner Brian Keesee ("Keesee"), John M. Martin, Kevin W. Stephenson ("Stephenson"), Oak Island Aircraft Management, Inc., Dick J. Thompson ("Thompson"), and Robert Weinbach ("Weinbach") (collectively, "defendants"). The complaint alleged that, in 2009, Holcombe and Pelton sought to purchase a share of the Company in order to secure airplane hangar space from defendants, and that Holcombe and Pelton subsequently formed Dos Aves to own the planes stored in their share of defendants' hangar. Subsequently, the Martins also purchased a share of the Company. At this point, the Company was owned in five equal 20% shares; one share owned by John M. Martin, Stephenson, and Oak Island Aircraft Management, Inc; one share owned by 717, which was in turn owned by Keesee; one share owned by Dos Aves, Holcombe, and Pelton; one share owned by the Martins; and one share owned by Weinbach, which was transferred to Thompson.
On 12 July 2015, Mark Finkelstein offered to purchase Thompson's 20% share for $45,000. At a subsequent meeting of the Company on 13 August 2015, Thompson presented a resolution to allow the sale. All members except for 717 and Keesee agreed. On 25 September 2015, Thompson notified the members of the Company that Keesee, individually, had offered to purchase Thompson's share for $40,000, under a right of first refusal pursuant to the Company's Operating Agreement. The Operating Agreement provided a thirty-day right of first refusal based on the terms of a third-party offer. On 8 October 2015, the Martins exercised their right to purchase their pro rata share of Thompson's interest in the Company based on the same terms as the Keesee offer. That same day, Dos Aves, Holcombe, and Pelton also elected to purchase their pro rata share. On 11 October 2015, Thompson informed the members of the Company that plaintiffs and 717 had elected to purchase pro rata shares, that the remaining members had declined to do so, and what each electing member would need to pay.
On 12 October 2015, Keesee informed the Martins' attorney that the Martins were not officially recognized members of the Company and that they had no right to participate in the sale of Thompson's share. Keesee sent a similar email to Holcombe and Pelton. At a Company meeting on 13 October 2015, Keesee informed the Company's membership that only 717 had the right to purchase Thompson's share.
At the 13 October 2015 meeting, the membership discussed amounts that were owed to Brunswick County, the Town of Oak Island, and the Brunswick County Airport Commission. Specifically, the meeting addressed combined overdue taxes and leasing fees of $10,239.39, attributable to Thompson's and 717's shares of the Company. On 27 October 2015, the Company received a check from Keesee individually in the amount of $10,239.39, purportedly for payment of expenses of "40% share to be validated." The check was subsequently returned, on the grounds that plaintiffs disputed Keesee's share. Neither 717 nor Keesee issued a repayment. Instead, on 16 November 2015, 717 issued a check for $10,239.39, again for "40% share expenses[.]"
Starting in August of 2015, Keesee and 717 began challenging and objecting to the ownership rights of Holcombe, Pelton, and Dos Aves. Starting in September of 2015, Keesee and 717 began threatening to "lock Plaintiffs out" of the hangar, or to have Holcombe or Pelton arrested.
Having alleged the above facts in their verified complaint, plaintiffs pursued causes of action for a temporary restraining order, a preliminary then permanent injunction, declaratory judgment stating that plaintiffs are members of the Company entitled to their pro rata shares of the Thompson sale, breach of contract based on Thompson's refusal to sell to them, breach of company documents by defendants based on defendants' refusal to recognize plaintiffs' membership rights, tortious interference with contract based on the same, and recovery of costs and attorney's fees.
On 3 March 2017, plaintiffs moved for summary judgment, declaratory judgment, and a permanent injunction. Keesee and 717 also filed a motion for summary judgment.[1] On 23 March 2017, the trial court entered an order on these motions and others not relevant to this appeal. The trial court granted summary judgment and declaratory judgment in favor of plaintiffs, and held that Keesee, 717, and Thompson were enjoined from challenging plaintiffs' ownership interests and the authority of the Operating Agreement, and ordered Thompson to perform under the sale contract with plaintiffs. The trial court also addressed plaintiffs' request for attorney's fees, and ruled that Keesee, 717, and Thompson, through their filings, had presented arguments "without basis in law or fact, misleading at best, and present[ing] no justiciable issue of law or fact as to Plaintiffs' membership and ownership interest in the Company." The court also considered the affidavits of the attorneys, and held that plaintiffs were entitled to an award of their attorney's fees as prevailing parties.
On 5 June 2017, defendants John M. Martin, Stephenson, and Oak Island Aircraft Management, Inc., filed a consent order agreeing to be bound by the trial court's order on summary judgment, declaratory judgment, and permanent injunction. Plaintiffs voluntarily dismissed their claims against these defendants without prejudice.
From the trial court's order on summary judgment, declaratory judgment, and preliminary injunction, Keesee, 717, and Thompson (collectively, "appellants") appeal.
II. Summary Judgment
In their first argument, appellants contend that the trial court erred in granting summary judgment in favor of plaintiffs. We disagree.
A. Standard of Review
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal , 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) ).
B. Analysis
Appellants contend that genuine issues of material fact exist with respect to the terms of the Operating Agreement. These terms include whether certain rights became effective in 2005 or 2009, or whether parties could store one or two airplanes in their share of the hangar. Appellants contend that their summary judgment arguments create a genuine issue of material fact because there were different versions of the Operating Agreement. Specifically, appellants contend that, on 12 September 2015, Holcombe circulated a version of the Operating Agreement which omitted two provisions, one limiting the number of airplanes each shareholder could store, and another permitting the Company to sell 20% shares with the unanimous consent of the membership.
Appellants' argument on this point is misguided. Although the omission of these sections raises some questions, it does not impact the material issues in this case, namely (1) the exercise of the parties' rights of first refusal, (2) plaintiffs' status as members under the agreement, and (3) whether Thompson breached his agreement to sell pro rata shares to plaintiffs. These differences in the two versions of the Operating Agreement do not raise genuine issues of material fact. We therefore hold that this argument is without merit.
Appellants further contend that Dos Aves was dissolved and reincorporated, that the reincorporated entity was never a member of the organization, and that the dissolved entity was prohibited from carrying on its business of involvement with the Company. With respect to dissolution, plaintiffs argued at the summary judgment hearing that, under the Operating Agreement, a party notified of default has 10 days to remedy that default. When Keesee challenged the dissolution of Dos Aves in 2015, Holcombe and Pelton reincorporated Dos Aves to remedy that default. The Operating Agreement also provides that any transfer of membership interest that does not follow protocol is void ab initio , and thus that, even if the default constituted a transfer of membership, it was void, and subsequently remedied. We therefore hold that this argument is without merit.
Appellants further contend that plaintiffs were merely economic members, and not full owners of a membership interest; they therefore contend that plaintiffs were not entitled to exercise a right of first refusal. Appellants base this argument on another section of the Operating Agreement which provides that no person who acquires an interest in the Company may become a full member without the express written consent of all other members. Even assuming that this is a valid distinction, the undisputed facts show that appellants treated plaintiffs as full members of the Company for roughly six years.
Plaintiffs stored their planes in the hangar, paid fees associated with operation of the hangar and the Company, and were presented to state and federal taxing authorities as members of the Company. In 2009, Keesee recognized Dos Aves in writing as a member of the Company, and in 2010, he recognized Dos Aves and the Martins. At a 2010 meeting, where Thompson was accepted as a member by written resolution, plaintiffs signed the resolution without any objection from appellants. It is clear, therefore, that for a period of roughly six years, up until Thompson decided to sell his share of the Company, appellants accepted, and benefited from, plaintiffs' status as full members of the Company.
There are several legal doctrines in this matter. For example, the doctrine of equitable estoppel applies "when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." Whitacre P'ship v. Biosignia, Inc. , 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004) (citations and quotation marks omitted). Under this doctrine, then, appellants-having for six years permitted plaintiffs to operate as if they were full members, without informing them otherwise-could be equitably estopped from denying plaintiffs' membership.
Similarly, there is the theory of quasi-estoppel, which provides that "a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." Id . at 18, 591 S.E.2d at 881-82. Quasi-estoppel could preclude Keesee and 717, who accepted plaintiffs' membership and financially benefited therefrom as a member of the Company, and Thompson, who benefited directly from plaintiffs' votes to approve him as a member of the Company, from taking the inconsistent position that plaintiffs were unable to do so.
Further, there are temporal concerns. The doctrine of laches is an equitable doctrine which operates to preclude a party from asserting a right, where that party has failed or neglected to do so over a period of time prejudicial to another party. Harris & Gurganus, Inc. v. Williams , 37 N.C. App. 585, 588, 246 S.E.2d 791, 794 (1978). Additionally, there is a three-year statute of limitations applicable to contracts. N.C. Gen. Stat. § 1-52(1) (2017).
It is clear that, over a period of six years, appellants benefited from and declined to challenge plaintiffs' membership in the Company. There are ample bases upon which the trial court could have relied to therefore estop appellants from challenging their membership status. We therefore hold that the trial court correctly found that plaintiffs were full members of the Company, which appellants could not deny.
Based upon this finding, the remainder of the order as it pertains to summary judgment follows logically. Because plaintiffs were full members of the Company, they were entitled to exercise their rights of first refusal. Because they did so properly-a fact which appellants do not and cannot challenge-plaintiffs were entitled to proceed with the purchase of Thompson's share of the Company. Thompson's unnecessary delay, coupled with Keesee's attempts to prevent the sale by alleging that plaintiffs had no rights, constituted breach of and interference with contract, respectively, and such conduct also constituted a breach of company documents. As the only challenged fact was that of plaintiffs' membership status, no other genuine issues of material fact arose, and summary judgment was appropriate. We therefore hold that the trial court did not err in entering summary judgment in favor of plaintiffs.
III. Motion to Strike
Appellants further contend that the trial court erred in granting plaintiffs' motion to strike Weinbach's affidavit. We disagree.
A. Standard of Review
"We review the trial court's ruling on the motion to strike [an] affidavit for abuse of discretion." Blair Concrete Servs., Inc. v. Van-Allen Steel Co. , 152 N.C. App. 215, 219, 566 S.E.2d 766, 768 (2002). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason ... [or] upon a showing that [the trial court's decision] was so arbitrary that it could not have been the result of a reasoned decision." White v. White , 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
B. Analysis
The trial court entered a default against Weinbach, holding that he had been properly served with the verified complaint, that he had failed to respond, move, or otherwise plead within the prescribed time, and that he was subject to default judgment. In the order from which appellants appeal, the trial court also granted plaintiffs' motion to strike Weinbach's affidavit.[2] On appeal, appellants contend that the trial court abused its discretion in granting the motion to strike.
Our precedent on this issue is clear. "The effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint and is prohibited from defending on the merits of the case." Spartan Leasing, Inc. v. Pollard , 101 N.C. App. 450, 460, 400 S.E.2d 476, 482 (1991) (citations omitted). By entry of his default, Weinbach surrendered the ability to argue in his own defense, and his affidavit was an impermissible attempt to do so.
Appellants cite Harris v. Carter , 33 N.C. App. 179, 234 S.E.2d 472 (1977), for the principle that a defaulting defendant may nonetheless testify, but this is an incomplete picture of the holding in that case. In fact, in Harris , the defaulting defendant was permitted to testify because his statements supported the plaintiff , rather than challenging or contradicting the complaint. In the instant case, Weinbach's affidavit does not cooperate with the complaint, but rather challenges it. As such, we hold that the trial court did not abuse its discretion in granting plaintiffs' motion to strike.
IV. Attorney's Fees
In their second argument, appellants contend that the trial court erred in awarding attorney's fees. We disagree.
A. Standard of Review
"The decision to award or deny attorney's fees under Section 6-21.5 is a matter left to the sound discretion of the trial court." Persis Nova Const., Inc. v. Edwards , 195 N.C. App. 55, 67, 671 S.E.2d 23, 30 (2009).
B. Analysis
In its order, the trial court awarded attorney's fees to plaintiffs, and to Stephenson. On appeal, appellants contend that the trial court erred in awarding attorney's fees.
With respect to Stephenson, appellants contend that he is not a "prevailing party," and therefore not entitled to attorney's fees. Our Statutes provide that:
In any civil action, special proceeding, or estate or trust proceeding, the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.
N.C. Gen. Stat. § 6-21.5 (2017).
Appellants contend that Stephenson "did not prevail on any claim or issue [,]" but rather "was a losing party as summary judgment was entered against all defendants including him." Appellants' contention, however, is misguided.
Although Stephenson was joined as a defendant, plaintiffs' motion for summary judgment did not address him. Rather, plaintiffs' motion sought (1) a permanent injunction "protecting and/or restoring" plaintiffs' ownership rights in the Company, including their rights of first refusal; (2) a declaratory judgment establishing the ownership rights of plaintiffs; and (3) summary judgment on plaintiffs' claims against Keesee, Thompson, and 717. Nowhere did plaintiffs' motion for summary judgment seek any recovery from Stephenson. Nor did Stephenson contest the complaint or file a counterclaim. And although Stephenson signed a consent order agreeing to be bound by the trial court's order on summary judgment, that still does not make Stephenson the "losing party," because as has been mentioned, nowhere did plaintiffs seek recovery from Stephenson.
Review of the trial court transcript offers further enlightenment. During the hearing, attorneys for plaintiffs and appellants offered arguments. Stephenson's counsel was mostly silent throughout the proceedings, but towards the end, he offered the following argument:
You know, in-in law school, one of the concepts that I always had trouble with was the concept of latches [sic], and I've raised it and never been able to establish it. I think this time it's established.
For nine years, these folks in a member-managed entity got along fine. And Mr. Keesee decided in 2015 to pop back up and raise a ruckus. And the ruckus has cost these folks over here a lot of money defending it and asserting that which, quite frankly, Mr. Nester's sloppiness has given a crack in the door that gave Mr. Keesee an opportunity to make his various arguments.
They all fail, and the Court should enter a summary judgment in accordance with the arguments that have been made before you.
In essence, Stephenson's attorney argued that appellants' case wasted time and money for plaintiffs, but also for defendants like Stephenson, and that summary judgment in favor of plaintiffs was appropriate. Stephenson, despite being joined as a defendant, was effectively taking plaintiffs' side in the matter.
Rather ironically, appellants' argument relies upon the very case that supports an award in Stephenson's favor. Appellants cite Persis Nova , which provides that, "by the plain language of the statute, attorney's fees may be awarded against more than one party in an action. In other words, a 'prevailing party,' as used in Section 6-21.5, is a party who prevails on a claim or issue in an action, not a party who prevails in the action. " Persis Nova , 195 N.C. App. at 66, 671 S.E.2d at 30. It is clear from the transcript that Stephenson argued for summary judgment in favor of plaintiffs, and given that the trial court awarded summary judgment in favor of plaintiffs, Stephenson prevailed on that claim.
With respect to plaintiffs, appellants argue that appellants raised justiciable issues, which precluded recovery of attorney's fees. On this matter, appellants cite the language of N.C. Gen. Stat. § 6-21.5, that the trial court may award attorney's fees "if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." Appellants contend that they raised several justiciable issues, specifically: (1) which of two versions of the Operating Agreement was controlling; (2) whether Dos Aves' dissolution impacted its ownership interest; (3) whether plaintiffs had full membership rights sufficient to exercise their rights of first refusal; (4) whether plaintiffs could store more than one airplane in the hangar per ownership interest, and (5) whether Keesee's purchase of Thompson's interest was proper.
However, going through the list raised by appellants, it is easy to see that these are not justiciable issues. As we held above, the differences between the two versions of the Operating Agreement made no material difference to the question of plaintiffs' membership status, nor could appellants' challenge plaintiffs' membership status. The argument about Dos Aves' status was likewise moot. The argument about plaintiffs storing multiple aircraft in the hangar was completely irrelevant to the dispute at issue. And any argument about Keesee's purchase was premised upon the faulty assumption that plaintiffs had no right of first refusal.
The trial court's findings on this matter are clear. Specifically, the trial court found:
4. Defendants Keesee and [717] have at all times from March 2009 until August 2015 acknowledged and treated Plaintiffs as members in and owners of the Company. Defendant Thompson has at all times from September 2010 until October 2015 acknowledged and treated Plaintiffs as members in and owners of the Company.
5. When [appellants] alleged Plaintiff Dos Aves was in default of the Company's applicable operating agreement by having filed articles of dissolution, Dos Aves took immediate action to cure the alleged default and promptly reinstated Dos Aves.
6. Despite their unequivocal knowledge and acceptance of Plaintiffs as members in and owners of the Company, on 18 March 2016, [appellants] through their Answer, defenses, and Counterclaim challenged and denied Plaintiffs' membership in and ownership of the Company.
7. The Court specifically finds that [appellants'] aforementioned positions of denying Plaintiffs' membership and ownership interest in the Company in said parties' Answer, defenses, and Counterclaim and as perpetuated throughout Keesee's Motion and Keesee's Affidavit to be without basis in law or fact, misleading at best, and presented no justiciable issue of law or fact as to Plaintiffs' membership and ownership interest in the Company.
Irrespective of how appellants attempted at trial, or attempt on appeal, to confound the matter with extraneous issues, the fact remains that this case, at its core, is about plaintiffs' membership and ownership interests in the Company. Despite having accepted plaintiffs' ownership for six years, appellants sought at trial to challenge and deny it. Any other issues raised by appellants were mere diversionary tactics, not legitimate justiciable issues for the trial court.
We hold that Stephenson, having prevailed in joining plaintiffs' motion for summary judgment, was a prevailing party entitled to an award of attorney's fees for the expense through which appellants put him in defending this case. We further hold that appellants did not raise justiciable issues in their answer, defenses, and counterclaim, but rather raised allegations which they knew to be without basis in law or fact, and that therefore plaintiffs were entitled to an award of attorney's fees for having to prosecute their claim against those frivolous allegations. We therefore hold that the trial court did not abuse its discretion in awarding attorney's fees in favor of plaintiffs and Stephenson.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and HUNTER concur.

The motion of Keesee and 717 is not in the record before us. However, the trial court's order makes specific reference to this motion, and we may therefore assume its existence.

Plaintiffs' motion is absent from the record. However, the trial court's reference to it in the order from which appeal is taken evinces its existence.