PEE DEE OIL COMPANY v. QUALITY OIL COMPANY, INC., T/A SWINK-QUALITY OIL COMPANY, AND JAMES H. POU BAILEY, JR.

No. 8520SC360

(Filed 1 April 1986)

**1. Contracts § 27.1— existence of contract—sufficiency of evidence**

The evidence was sufficient to support a finding that defendant company entered a valid written contract to purchase certain assets of plaintiff where it tended to show that defendant signed a letter which was an offer to purchase certain assets for $215,000 and to pay the reasonable market value for certain equipment, and that plaintiff accepted that offer by notifying defendant orally and signing a written contract defendant had prepared. N.C.G.S. 22-2; N.C.G.S. 25-2-201.

**2. Contracts § 21.3— repudiation of contract—showing of compliance with conditions precedent unnecessary**

Plaintiff was not required to show that it had complied with conditions precedent in order to recover against defendant for breach of contract where defendant had repudiated the contract; rather, plaintiff was required to show only that it could have performed the contract if defendant had not repudiated it.

APPEAL by plaintiff from *McConnell, Judge.* Judgment entered 6 December 1984 in Superior Court, ANSON County. Heard in the Court of Appeals 22 October 1985.

The plaintiff, Pee Dee Oil Company, a North Carolina corporation, was engaged in the wholesale distribution and retail sale of various Shell Oil Company products in Anson, Richmond and Scotland Counties, and its President was James A. Hardison, Jr. Quality Oil Company, Inc., t/a Swink-Quality Oil Company, also a North Carolina corporation, was similarly engaged in Richmond County handling Texaco products; its President was Jack Swink and its Chairman of the Board was defendant James H. Pou

Bailey, Jr., who was also President of Z. V. Pate, Inc., the defendant company's controlling stockholder. Plaintiff asserts four claims against defendant oil company — breach of an express written contract, breach of implied contract, unfair trade practice, and punitive damages — all based upon defendant company's failure to buy certain of plaintiff's operating assets after either agreeing to buy them or leading plaintiff to believe that it would do so. One claim is asserted against defendant Bailey for maliciously inducing defendant corporation to breach its contract. A jury trial was waived and at the close of plaintiff's evidence all the claims were dismissed by a directed verdict.

Plaintiff's evidence included the deposition or other testimony of Mr. Hardison, Mr. Swink, and defendant Bailey, as well as several documents and letters that were either written, prepared or executed by one party or the other. Viewed in the light most favorable to plaintiff, the evidence was to the following effect: In September 1982 the presidents of the corporate parties had several discussions about the possibility of defendant company buying some or all of plaintiff's operating assets, and plaintiff was asked to submit a written offer of sale to the defendant company. By letter mailed on 7 October 1982, plaintiff offered to sell to defendant corporation one piece of real estate (the Fastway station in Rockingham) and five service station leases (Speedie property, Holiday Shell, Rockingham Shell, Capel Food Market and Laurinburg lot), along with certain tanks and other equipment, for $305,000. An attachment to the letter generally described each asset referred to, stated generally the terms of the leases involved, and put individual prices on several of the assets offered for sale. Defendant corporation replied by letter dated 14 October 1982, stating that it was interested in plaintiff's proposition but needed certain additional information before a decision could be made, and that information was sent to defendant by plaintiff's letter dated 19 October 1982. On 27 October 1982, in a telephone conversation between the two corporate presidents, defendant company made a counterproposal to buy certain of plaintiff's assets, which proposal was put in writing and mailed to plaintiff that same day, as follows:

Mr. James A. Hardison, Jr.
First National Bank
Post Office Box 111
Wadesboro, North Carolina 28170

Dear Jimmy:

Although we discussed a counter proposal to purchase certain assets of Pee Dee Oil Company by telephone today, we are describing our proposal in writing as you requested.

Since we are not as familiar with the Anson County market as you may be, we are having some difficulty in deciding if we should eliminate that market from your proposal. In such an event, we propose to allow you to continue to supply the two Speedee stations and Capel's Food Mart as a branded subjobber. This would allow you to continue to operate the entire Anson County market as you are presently doing.

We propose to purchase your Shell contract for $75,000.00 and the Fastway station in Rockingham for $140,000.00, for a total of $215,000.00. Further, we would pay you a reasonable market value for the equipment located at the Rockingham Self Service and Holiday Shell. We would, of course, assume the leases on these locations as well as the Laurinburg lot. The Gibson Oil Company contract would be honored by us, at least, for the remaining period of the contract.

Please contact us as soon as you have made your decision on our proposal.

Sincerely yours,

Jack B. Swink

Immediately upon receiving the proposal plaintiff's president advised Swink that it was accepted. Soon thereafter the corporate presidents agreed that the equipment referred to in the counterproposal was worth $20,000 and defendant corporation then had its attorneys prepare a written contract of purchase covering all the matters that were being agreed to. Near the end of January 1983 when the contract was completed, defendant company approved its terms and submitted the document unsigned to plaintiff. Among other things, the contract fully described all the assets referred to in the written counterproposal, stated that

they were being bought for $235,000, and subject to the approval of Shell Oil Company and the service station lessors approving the transfer of the franchise and leases involved, plaintiff executed the document on 1 February 1983 and immediately returned it to defendant oil company. Meanwhile plaintiff's attorneys prepared the many documents needed to convey or transfer the real estate, leases, Shell franchise, and articles of personal property involved in the sale to the defendant corporation, and those documents were forwarded to defendant's attorney by a letter dated 18 February 1983. By letter dated 28 February 1983 defendant's attorneys acknowledged receiving the documents but informed plaintiff's attorneys that their client had not yet signed the written contract and had advised them that the matter "would be held in abeyance at the present time." Shortly thereafter Swink told Hardison that the matter was "on hold" because the company had a problem, but he did not state what it was. On 15 March 1983 Swink told Hardison that the problem was that the defendant company's controlling stockholder, Z. V. Pate, Inc., had earlier agreed to sell one of its subsidiaries to Publix, a Tennessee company, and the non-compete clause in that agreement might be violated by defendant company operating the facilities involved. The next day Hardison sent a letter to Swink stating, in substance, that the delay in completing the purchase had greatly inconvenienced plaintiff's business; that the transaction between Z. V. Pate, Inc. and Publix was irrelevant to plaintiff's sale to the defendant company; and that Swink's help in expediting an early resolution of the matter would be appreciated. Plaintiff received no response thereto and in June 1984, out of necessity, it sold some of the assets involved at a loss.

*Taylor and Bower, by H. P. Taylor, Jr., for plaintiff appellant.*

*Etheridge, Moser and Garner, by Kennieth S. Etheridge and Terry R. Garner, for defendant appellees.*

PHILLIPS, Judge.

[1, 2] The directed verdict as to plaintiff's claim for breach of a written contract, the main claim asserted, was clearly erroneous —though why the trial judge directed a verdict rather than arrive at one is beyond our comprehension. Be that as it may, there

was plenary evidence before the court that the defendant company had a written contract to purchase certain assets of the plaintiff, that it refused to go through with the purchase, and that plaintiff was damaged thereby. That defendant company did not sign the asset purchase contract, which was prepared at its direction, is not decisive, for a written contract can consist of several writings. *Hines v. Tripp*, 263 N.C. 470, 139 S.E. 2d 545 (1965). The 27 October 1982 letter, which defendant did sign, can only be interpreted as an offer to buy the assets referred to except the equipment for $215,000, and to pay the reasonable market value for the equipment; and the evidence tends to show that plaintiff accepted that offer, first by notifying defendant orally and then by signing the written contract defendant had prepared, which essentially duplicated the terms contained in defendant's offer. The defendant's contention that the 27 October letter was too vague to be the basis for a contract because the price of the equipment was not set has no merit. The equipment was but a minor, incidental part of the purchase and contracts do not fail because minor details are left for future determination. *Hurdle v. White*, 34 N.C. App. 644, 239 S.E. 2d 589 (1977). Nor, as the defendants contend, is the claim barred as a matter of law either by the statute of frauds or because plaintiff failed to meet a condition precedent to closing the transaction, by obtaining the written approval of Shell Oil Company and the lessors to the transfer of the franchise and leases to defendant. If the parties did enter into a written contract, as plaintiff's evidence tends to show, the statute of frauds, G.S. 22-2, G.S. 25-2-201, is no stumbling block, because each party signed a writing that meets the requirements of those statutes. And if defendant had already repudiated the contract, as plaintiff's evidence tends to show, that relieved plaintiff of the necessity of complying with the conditions precedent before demanding compliance by the defendant; for the law does not require the doing of vain things. *Pappas v. Crist*, 223 N.C. 265, 25 S.E. 2d 850 (1943). It is enough that plaintiff's evidence tends to show that it could have performed the contract if defendant had not repudiated it; it was not required to show that it had performed. Thus, this cause of action is returned to the Superior Court for a new trial thereon.

But the verdicts directed against plaintiff's other claims are not shown to be erroneous and we affirm them. The punitive dam-

---

ages claim and the implied contract claim, neither of which are mentioned in plaintiff's brief, have been abandoned under the provisions of Rule 28, N.C. Rules of Appellate Procedure. And the evidence presented does not support either the unfair trade practices claim or the claim against defendant Bailey for maliciously interfering with plaintiff's contract rights.

The judgment dismissing plaintiff's first cause of action for breach of a written contract is vacated. The judgment dismissing plaintiff's second, third, fourth and fifth causes of action is affirmed.

Vacated in part; affirmed in part.

Judges WEBB and JOHNSON concur.