CIRO SCOTTO DI FREGA, Plaintiff v. LUIGI PUGLIESE, ROBERT WADE EDWARDS, and MARTHA E. EDWARDS, Defendants

No. COA03-950

(Filed 1 June 2004)

## 1. Evidence— prior crimes or bad acts—revocation of real estate license

The trial court did not abuse its discretion in a conversion of personal property and breach of contract case by excluding evidence that defendant wife's real estate license had been permanently revoked prior to trial, because: (1) defendant's real estate license was revoked twenty-one years earlier for acts similar to those alleged at bar; and (2) N.C.G.S. § 8C-1, Rule 404(b) prohibits evidence of other crimes, wrongs, or acts to show that a defendant acted in conformity therewith, and the pertinent evidence could have raised a legally spurious presumption of guilt.

## 2. Evidence— financial status—punitive damages

The trial court did not err in a conversion of personal property and breach of contract case by excluding evidence of defendant married couple's financial status, because: (1) evidence of financial status is admissible only in cases warranting punitive damages and not by mere assertion of a punitive damages claim; and (2) the trial court determined that plaintiff's evidence failed to show that defendants' actions in terminating plaintiff's lease were fraudulent, willful or wanton, or malicious as required by N.C.G.S. § 1D-15(a).

## 3. Conspiracy— civil—motion for directed verdict—suspicion or conjecture

The trial court did not err by granting defendants' motion for directed verdict regarding plaintiff's claim for civil conspiracy by defendants to terminate plaintiff's lease because, viewed in the light most favorable to plaintiff, the evidence showed only a suspicion or conjecture that a conspiracy in fact existed.

## 4. Unfair Trade Practices— civil conspiracy—motion for directed verdict

The trial court did not err by granting defendants' motion for directed verdict regarding plaintiff's claim for unfair and deceptive trade practices based on defendants entering into an alleged

conspiracy to terminate plaintiff's rights under his lease because, viewing the evidence in the light most favorable to plaintiff, there was insufficient evidence to support a claim for civil conspiracy and the record is devoid of any other evidence to support a claim for unfair and deceptive trade practices.

**5. Damages and Remedies— punitive damages—motion for directed verdict**

The trial court did not err by granting defendants' motion for directed verdict regarding plaintiff's claim for punitive damages based on defendants entering into an alleged conspiracy to terminate plaintiff's rights under his lease, because: (1) viewed in the light most favorable to plaintiff, the record is devoid of any evidence supporting a claim of civil conspiracy or unfair and deceptive trade practices; and (2) there is no evidence in the record to support plaintiff's contentions that defendants' actions were fraudulent, willful or wanton, or malicious.

**6. Conversion— counterclaim—removal and disposal of property**

The trial court did not err by denying plaintiff's motion to dismiss defendants' counterclaim for conversion because there was sufficient evidence showing that defendants' property remained in the pertinent restaurant, and plaintiff admits removing and disposing of defendants' property.

**7. Contracts— tortious interference—motion to set aside verdict**

The trial court did not abuse its discretion by denying plaintiff's motion to set aside the verdict finding no liability for tortious interference of contract by defendants on the ground that the verdict was against the greater weight of the evidence, because: (1) plaintiff rests on an alleged conversation between defendants to enter into a civil conspiracy to terminate plaintiff's lease based on alleged manufactured breaches of the lease, but evidence was presented to show the defaults to be legitimate breaches that were never cured although adequate notice and time was given to cure the breaches; and (2) credibility of evidence is ultimately left to the decision of the jury, and sufficient evidence supports its verdict that defendants did not interfere with plaintiff's contract.

**8. Damages and Remedies— amount—influence of passion or prejudice**

The trial court did not abuse its discretion by entering judgment based on the jury's verdict finding defendants converted plaintiff's property and breached the contract, because: (1) competent evidence supports the amount of damages awarded by the jury; and (2) plaintiff failed to show that the damages are inadequate and were given under the influence of passion or prejudice.

Appeal by plaintiff from judgment entered 8 January 2003 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 21 April 2004.

*Daniel R. Johnston, for plaintiff-appellant.*

*Laurel O. Boyles, for defendants-appellees Robert Wade Edwards and Martha E. Edwards.*

*No brief filed for defendant-appellee Luigi Pugliese.*

TYSON, Judge.

Ciro Scotto Di Frega ("plaintiff") appeals from a judgment entered after a jury returned a verdict in favor of plaintiff for conversion of his personal property by Robert Wade Edwards and Martha E. Edwards ("the Edwardses") and breach of contract by Luigi Pugliese ("Pugliese") (collectively, "defendants"). We hold there was no error at trial.

## I. Background

The Edwardses own improved commercial property ("the premises") in Mocksville, North Carolina. On or about 13 February 1993, the Edwardses entered into a lease ("1993 lease") with an option to purchase with three individuals who planned to operate a restaurant on the premises. On 1 September 1998, at the expiration of the 1993 lease, Ibrahim A. Elaasar ("Elaasar") acquired all of the interests of his two partners, renewed and extended the lease until 31 March 2002, and changed the lessees' names from the three individual names to "Mocksville Kitchens, Inc." The lease allowed the premises to be sublet to another individual or entity without landlord's approval and provided that the premises could be purchased for $189,000.00 at any time during the term of the lease.

Plaintiff is the operator of a restaurant in Forsyth County, North Carolina. Plaintiff became interested in purchasing Elaasar's restaurant. On 4 February 1999, Mocksville Kitchens, Inc., subleased the restaurant to plaintiff and his brother, sold all of the equipment and furnishings to them for $75,000.00, and assigned all its rights in the option to purchase to plaintiff and his brother. Plaintiff claims the Edwardses knew that he was not merely subleasing the premises but was acquiring all rights in the premises. Under the terms of the sublease, plaintiff paid rent directly to the Edwardses and was bound by all of the remaining terms of the 1993 lease.

Plaintiff and his brother opened an Italian restaurant on the premises. Plaintiff's brother managed the daily operations of the restaurant. Plaintiff's brother became seriously ill and was unable to continue operating the restaurant. On 1 September 1999, plaintiff sold the business to Pugliese for $135,000.00 and subleased the building under the terms of the 1993 lease. Pugliese paid rent directly to the Edwardses. The 1993 lease contained a rent escalation clause increasing the rent from $1,600.00 per month to $1,700.00, effective 1 March 2000. Pugliese paid only $1,600.00 for rental from April to June. The rent arrearage was never paid. Around this same time, the plumbing failed in the restaurant. The Edwardses fixed the plumbing and paid for all costs. The 1993 lease required the tenant to pay all costs of maintenance, upkeep, and repairs except for those made to the roof of the building. The Edwardses have not been paid for these repairs.

Subsequently, the Edwardses, through counsel, notified the original lessee, Mocksville Kitchens, Inc., that the lease was breached. The letter listed four defaults: (1) failure to provide proof of general liability insurance; (2) failure to pay back rent in the amount of $300.00 for the months of April, May, and June of 2000; (3) failure to reimburse plumbing repairs made to the premises; and (4) failure to pay for the cost of a replacement heat pump. Elaasar was given ten days to cure, but did not respond. Plaintiff was also notified and promised to look into the matters. On 5 October 2000, the Edwardses terminated the lease with Elaasar and entered into a lease and option agreement with Pugliese.

Plaintiff brought suit against the Edwardses and Pugliese claiming fraud, civil conspiracy, conversion, unfair and deceptive trade practices, punitive damages, breach of contract, interference with contract, and unjust enrichment. Defendants moved for summary

judgment on all of plaintiff's claims. The trial court denied all defendants' motions except plaintiff's claim for fraud, which it granted. At trial, defendants' motion for directed verdict on plaintiff's claims for civil conspiracy, unfair and deceptive trade practices, and punitive damages was granted by the trial court.

The jury returned a verdict in favor of plaintiff in the amount of $17,001.00 for conversion of his personal property and breach of contract by the Edwardses, and $4,000.00 for breach of contract by Pugliese. The jury also found that plaintiff had converted property belonging to the Edwardses and awarded $1.00 in damages. The jury found against plaintiff on all other claims or awarded only nominal damages. Plaintiff appeals.

## II. Issues

The issues are whether the trial court erred in: (1) excluding evidence that the North Carolina Real Estate Commission revoked Martha Edwards's real estate license; (2) excluding evidence of the Edwardses' financial status; (3) granting defendants' motion for directed verdict regarding: (a) plaintiff's claim for civil conspiracy, (b) plaintiff's claim for unfair and deceptive trade practices, and (c) plaintiff's claim for punitive damages; (4) denying plaintiff's motion to dismiss the Edwardses' counterclaim for conversion; (5) denying plaintiff's motion to set aside the verdict; and (6) entering a judgment unsupported by the evidence.

## III. Evidence of Revocation of Real Estate License

[1] Plaintiff contends that the trial court erred in excluding evidence that Martha Edwards's real estate license had been permanently revoked prior to trial. We disagree.

North Carolina Rules of Evidence, Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). The trial court must balance the probative value of the proffered evidence against any alleged unfair prejudice. *State v. Mahaley*, 332 N.C. 583, 598, 423 S.E.2d 58, 67

(1992), *cert. denied,* 513 U.S. 1089, 130 L. Ed. 2d 649 (1995). Our Supreme Court has held, "[t]he dangerous tendency of this class of evidence to mislead and raise a legally spurious presumption of guilt requires that its admissibility should be subject to strict scrutiny by the courts." *State v. Johnson,* 317 N.C. 417, 430, 347 S.E.2d 7, 15 (1986).

> Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected.

*State v. McClain,* 240 N.C. 171, 177, 81 S.E.2d 364, 368 (1954).

The trial court's sound discretion determines whether to exclude evidence on the grounds that such evidence would be unduly or unfairly prejudicial. *State v. Mason,* 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). To reverse the trial court's ruling, plaintiff must show that the ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Jones,* 89 N.C. App. 584, 594, 367 S.E.2d 139, 145 (1988), *overruled in part by State v. Hinnant,* 351 N.C. 277, 523 S.E.2d 663 (2000).

After hearing arguments and reviewing the conclusions of law from the North Carolina Real Estate Licensing Board in the prior order revoking the license, the trial court excluded evidence of the revocation of Martha Edwards's real estate license. The trial court held, "even if relevant . . . the application of the 403 balancing test would indicate that the prejudice, its introduction would outweigh any probative value given its age, after review of the contents of that order." The record indicates Martha Edwards's real estate license was revoked twenty-one years earlier for acts similar to those alleged at bar. Rule 404(b) prohibits evidence of other crimes, wrongs, or acts to show that a defendant "acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). This evidence could have raised "a legally spurious presumption of guilt" against Martha Edwards in violation of Rule 404(b). *McClain,* 240 N.C. at 177, 81 S.E.2d at 368. Plaintiff has failed to show the trial court abused its discretion in excluding evidence of the revocation of Martha Edwards's real estate license. Plaintiff's assignment of error is overruled.

## IV. Evidence of the Edwardses' Financial Status

**[2]** Plaintiff contends that the trial court erred in excluding evidence regarding the Edwardses' financial status. We disagree.

"Ordinarily, a party's financial ability to respond in damages . . . is totally irrelevant to the issue of liability; and the admission of evidence tending to establish such ability is held to be prejudicial, except in cases *warranting* an award of punitive damages." *Harvel's, Inc. v. Eggleston*, 268 N.C. 388, 392, 150 S.E.2d 786, 790 (1966) (emphasis supplied). "[I]t is well established that evidence as to the financial worth of a defendant is competent for consideration by the jury when an issue as to punitive damages is *warranted* and submitted." *Hinson v. Dawson*, 244 N.C. 23, 29, 92 S.E.2d 393, 397 (1956) (emphasis supplied).

Plaintiff argues that evidence of a defendant's financial status is admissible by mere assertion of a punitive damages claim. We disagree. Evidence of this nature is admitted *only* in cases *warranting* punitive damages. *Id.* Here, the trial court determined that plaintiff's evidence failed to show that defendants' actions in terminating plaintiff's lease were fraudulent, willful or wanton, or malicious as required by N.C. Gen. Stat. § 1D-15(a). The trial court ultimately found punitive damages were not warranted and dismissed plaintiff's claim. Evidence of the Edwardses' financial status was irrelevant to the remaining claims. Plaintiff's assignment of error is overruled.

## V. Granting of Directed Verdict

Plaintiff contends that the trial court erred in granting defendants' motion for directed verdict regarding his claims of civil conspiracy, unfair and deceptive trade practices, and punitive damages. We disagree. The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. *Kelly v. Harvester Co.*, 278 N.C. 153, 158, 179 S.E.2d 396, 397 (1971).

### A. Civil Conspiracy

**[3]** A claim for civil conspiracy exists for wrongful acts by persons pursuant to a conspiracy. *Dalton v. Camp*, 138 N.C. App. 201, 213, 531 S.E.2d 258, 266 (2000), *rev'd on other grounds*, 353 N.C. 647, 548 S.E.2d 704 (2001). A claim for civil conspiracy consists of: (1) an agreement between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement results in

injury to the plaintiff. *Boyd v. Drum,* 129 N.C. App. 586, 592, 501 S.E.2d 91, 96 (1998), *aff'd,* 350 N.C. 90, 511 S.E.2d 304 (1999); *see also Neugent v. Beroth Oil Co.,* 149 N.C. App. 38, 53, 560 S.E.2d 829, 839 (2002), *disc. rev. and cert. denied,* 356 N.C. 675, 577 S.E.2d 628 (2003). A threshold requirement in any cause of action for damages caused by acts committed pursuant to a conspiracy must be the showing that a conspiracy in fact existed. *Fox v. Wilson,* 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987). Although liability may be established by circumstantial evidence, the evidence of the agreement must be more than a suspicion or conjecture to justify submission of the issue to the jury. *Dickens v. Puryear,* 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981).

Plaintiff argues that the testimony of Elaasar showed that defendants entered into an agreement to wrongfully terminate plaintiff's lease to allow defendants to enter into a subsequent contract. Plaintiff contends that the evidence shows that the Edwardses promised to "cut out" plaintiff so that Pugliese would not have to deal with him anymore and could enter into a contract directly with the Edwardses. Plaintiff further contends that after this agreement was made, the Edwardses manufactured breaches to terminate his lease.

A careful review of the record shows that this evidence came solely from an alleged conversation that took place in Pugliese's restaurant and overheard by Elaasar. The record is devoid of any other evidence that would tend to support a civil conspiracy. Further, nothing in the record supports plaintiff's contentions that the breaches of the lease were manufactured solely so that the Edwardses could terminate his lease. In fact, the evidence shows that Elaasar was in arrears in the amount of $300.00, that the Edwardses had not been paid for fixing the plumbing and replacing the water pump, and that Elaasar had failed to provide proof of insurance. The evidence also shows the Edwardses notified Elaasar before terminating his lease, and gave him ten days to cure all breaches. The Edwardses were neither in privity of estate nor privity of contract with plaintiff and owed no duty to notify him. *Neal v. Craig Brown, Inc.,* 86 N.C. App. 157, 162, 356 S.E.2d 912, 915, *disc. rev. denied,* 320 N.C. 794, 361 S.E.2d 80 (1987). However, plaintiff was informed of the breaches and the ten day period to cure. The breaches were never cured by any party within the period allowed.

Viewed in the light most favorable to the plaintiff, the evidence supporting a civil conspiracy by defendants to terminate plain-

tiff's lease shows only a "suspicion or conjecture" that a conspiracy in fact existed. Submission of this issue to the jury was not justified by the evidence. *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. The trial court did not err in granting defendants' motion for directed verdict on the issue of civil conspiracy. Plaintiff's assignment of error is overruled.

### B.  Unfair and Deceptive Trade Practices

[4] To establish a *prima facie* case of unfair and deceptive trade practices, a plaintiff must show: (1) the defendant committed an unfair or deceptive trade practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). An act is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). "Some type of egregious or aggravating circumstances must be alleged and proved. . . . Even a party who intentionally breaches a contract is not, without more, liable for such conduct under the North Carolina Unfair Trade Practices Act." *Allied Distribs. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993) (citing *Pee Dee Oil Co. v. Quality Oil Co.*, 80 N.C. App. 219, 341 S.E.2d 113, 116, *disc. rev. denied*, 317 N.C. 706, 347 S.E.2d 438 (1986)). Whether an act or practice is unfair or deceptive is a question of law for the court. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681, *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000).

Plaintiff contends that defendants' actions constituted unfair and deceptive trade practices. Plaintiff argues that defendants actions of entering into a civil conspiracy to terminate his lease supports this argument. We disagree.

As noted, plaintiff's evidence consisted solely of an alleged conversation that took place in Pugliese's restaurant and overheard by Elaasar. The record is devoid of any other evidence that would tend to support a civil conspiracy. In fact, the record is devoid of any evidence that defendants committed any acts whatsoever that rise to the level of being "unethical or unscrupulous" to support a claim of unfair and deceptive trade practices. *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403.

In light of our holding of insufficient evidence to support a claim for civil conspiracy, and because, viewing the evidence in the light

most favorable to plaintiff, the record is devoid of any other evidence to support a claim of unfair and deceptive trade practices, the trial court did not err in granting defendants' motion for directed verdict on the issue of unfair and deceptive trade practices. Plaintiff's assignment of error is overruled.

### C. Punitive Damages

**[5]** N.C. Gen. Stat. § 1D-15(a) (2003) states:

> Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
>
> (1) Fraud.
>
> (2) Malice.
>
> (3) Willful or wanton conduct.

Even where sufficient acts are alleged to make out an identifiable tort, the tortious conduct must be accompanied by some element of aggravation before punitive damages will be allowed. *Newton v. Insurance Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976). Whether the facts stated in the pleadings are sufficient to bring the case within the rule allowing punitive damages is a question of law. *Worthy v. Knight*, 210 N.C. 498, 500, 187 S.E. 771, 772 (1936).

Plaintiff argues that defendants' conduct was willful and wanton because defendants entered into a conspiracy to terminate plaintiff's rights under his lease. As noted, viewing the evidence in the light most favorable to plaintiff, the record is devoid of any evidence supporting a claim of civil conspiracy or unfair and deceptive trade practices. Further, there is no evidence in the record to support plaintiff's contentions that defendants' actions were fraudulent, willful or wanton, or malicious. Based on our reasoning in Sections V(A) and V(B) of this opinion, the trial court did not err in granting defendants' motion for directed verdict on the issue of punitive damages. Plaintiff's assignment of error is overruled.

### VI. The Edwardses' Counterclaim for Conversion

**[6]** Plaintiff contends the trial court erred in denying his motion to dismiss the Edwardses' counterclaim for conversion. Plaintiff argues

DI FREGA v. PUGLIESE

[164 N.C. App. 499 (2004)]

that insufficient evidence was presented to submit this issue to the jury. We disagree.

Conversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner. *Nelson v. Chang*, 78 N.C. App. 471, 476, 337 S.E.2d 650, 654 (1985), *disc. rev. denied*, 317 N.C. 335, 346 S.E.2d 501 (1986).

The record and plaintiff's brief show that when plaintiff subleased the property from Elaasar, the Edwardses owned personal property and restaurant equipment that remained within the restaurant. Plaintiff acknowledges that he performed extensive renovations on the restaurant in an effort to refurbish and equip it as an Italian restaurant. These efforts included removing some of the existing equipment and property. Plaintiff admits that he disposed of "obsolete, unsuitable, and broken equipment" belonging to the Edwardses. Further, the 1993 lease entered into by the Edwardses and Mocksville Kitchens, Inc. stated, "In the event LESSEES elect not to use any portion of the equipment located on the premises, said unused equipment shall be turned over to LESSORS." As a sublessee, plaintiff was bound by all clauses in the 1993 lease and was required to take notice of and return the Edwardses' ownership of personal property and equipment.

As sufficient evidence was presented showing that the Edwardses' property remained in the restaurant and plaintiff admits removing the Edwardses' property, the trial court did not err in denying plaintiff's motion to dismiss. Plaintiff's assignment of error is overruled.

### VII. Motion to Set Aside the Verdict

[7] Plaintiff contends that the trial court erred in denying his motion to set aside the jury's verdict on the ground that the verdict was against the greater weight of the evidence. We disagree.

Rule 59 of the North Carolina Rules of Civil Procedure states:

(a) *Grounds.*—A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:

. . . .

(7)  Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law . . . .

N.C. Gen. Stat. § 1A-1, Rule 59(a) (2003).

A denial of a motion to set aside the verdict of the jury is addressed to the sound discretion of the trial court and is reviewable on appeal under an abuse of discretion standard. *State v. Fleming*, 350 N.C. 109, 146, 512 S.E.2d 720, 745, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). A " 'ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.' " *State v. T.D.R.*, 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 832 (1985)). "The jury's function as trier of fact 'must be given the utmost consideration and deference before a jury's decision is to be set aside.' " *Albrecht v. Dorsett*, 131 N.C. App. 502, 506, 508 S.E.2d 319, 322 (1998) (quoting *Coletrane v. Lamb*, 42 N.C. App. 654, 657, 257 S.E.2d 445, 447 (1979)). The credibility of the evidence is exclusively for the jury. *Albrecht*, 131 N.C. App. at 506, 508 S.E.2d at 322.

Plaintiff argues that the jury's verdict finding no liability for tortious interference of contract by the Edwardses is "nonsensical." Plaintiff again rests solely on the evidence of the alleged conversation between defendants to enter into a civil conspiracy to terminate plaintiff's lease based on manufactured breaches of the lease. This conversation was the sole evidence presented by plaintiff to support most of his claims against defendants. Evidence was presented to show the defaults to be legitimate breaches that were never cured by Elaasar or plaintiff, although both were given adequate notice and time to cure.

As the credibility of evidence is ultimately left to the decision of the jury, and sufficient evidence supports its verdict that the Edwardses did not interfere with plaintiff's contract, the trial court did not abuse its discretion in denying plaintiff's motion to set aside the verdict. Plaintiff's assignment of error is overruled.

### VIII.  Entering Judgment

[8]  Plaintiff also contends that the trial court erred in entering judgment because the verdict in favor of plaintiff is inadequate as a matter of law. We disagree.

Dɪ **FREGA** v. **PUGLIESE**

[164 N.C. App. 499 (2004)]

Rule 59 of the North Carolina Rules of Civil Procedure states:

(a) *Grounds.*—A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:

. . . .

(6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;

N.C. Gen. Stat. § 1A-1, Rule 59(a) (2003). A motion based upon inadequacy of the damages is addressed to the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. *Albrecht*, 131 N.C. App. at 506, 508 S.E.2d at 322.

This Court has held that where there is no stipulation of the parties as to damages, testimony of witnesses as to the nature and extent of a party's injuries or damages is "simply evidence in the case to be considered by the jury." *Pelzer v. United Parcel Service*, 126 N.C. App. 305, 311, 484 S.E.2d 849, 853, *disc. rev. denied*, 346 N.C. 549, 488 S.E.2d 808 (1997) (citing *Smith v. Beasley*, 298 N.C. 798, 259 S.E.2d 907 (1979)). It is well within the jury's power to minimize or wholly disregard even the testimony given by a party's expert witnesses. *Albrecht*, 131 N.C. App. at 506, 508 S.E.2d at 322.

Here, the jury ruled in favor of plaintiff and found the Edwardses had converted plaintiff's property and breached the contract, and also found Pugliese had breached the contract. The jury awarded plaintiff $17,001.00 for conversion and breach of contract against the Edwardses and $4,000.00 for breach of contract against Pugliese. The jury also found plaintiff converted the Edwardses' restaurant equipment and awarded $1.00 in damages.

The jury weighs the credibility of the evidence presented, including the amount of damages suffered by the parties, and may disregard any and all evidence it determines to be unreliable. *Id.* Competent evidence supports the amount of damages awarded by the jury. Plaintiff has failed to show that the damages are inadequate and were given "under the influence of passion or prejudice." N.C. Gen. Stat. § 1A-1, Rule 59(a)(6) (2003). The trial court did not abuse its discretion in entering judgment based on this verdict. Plaintiff's assignment of error is overruled.

### IX.  Conclusion

Plaintiff has failed to show that the trial court erred in excluding evidence of the revocation of Martha Edwards's real estate license and the Edwardses' financial status. Plaintiff has also failed to show that the trial court erred in granting defendants' motion for directed verdict on the issues of civil conspiracy, unfair and deceptive trade practices, and punitive damages. Plaintiff failed to show the trial court erred in denying his motion to dismiss the Edwardses' counterclaim for conversion. Plaintiff failed to show the trial court erred in denying his motion to set aside the verdict and in entering judgment based on this verdict. We hold there was no error at trial, in the jury's verdict, or the judgment entered thereon.

No error.

Judges McGEE and TIMMONS-GOODSON concur.