BRUNING & FEDERLE MFG. CO., Plaintiff,
v.
RICKY D. MILLS and ASSOCIATED METAL WORKS, INC., Defendants.
No. COA04-999
North Carolina Court of Appeals
Filed October 4, 2005
This case not for publication
Iredell County No. 02 CVS 2239.
Eisele, Ashburn, Greene & Chapman, P.A., by Douglas G. Eisele, for plaintiff-appellant.
Pope, McMillan, Kutteh, Simon & Privette, P.A., by William P. Pope, Charles A. Schieck, and J. Patrick Stutts, for defendant-appellee, Ricky D. Mills.
Mayer, Brown, Rowe, & Maw, L.L.P., by Robert B. Cordle, for defendant-appellee, Associated Metal Works, Inc.
CALABRIA, Judge.
Bruning & Federle Mfg. Co. ("B&F") appeals the trial court's order granting summary judgment to Ricky D. Mills ("Mills") and Associated Metal Works, Inc. ("Associated") (collectively "defendants") with respect to its claims against defendants for violations of the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152 to -164, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 to-38, and against Mills for breach of a fiduciary duty to B&F. We affirm.
B&F is a company in the business of designing, fabricating, installing, and selling dust removal systems for use in the woodworking industry and related industries. Associated was formed by two former B&F employees in 1997 and is a competitor of B&F. For over thirty years as of December 2001, Mills had been vice-president of B&F, a shareholder in the company, and an employee.
As vice-president of B&F, Mills was responsible for the marketing, sales, and design of B&F's dust removal systems. In late 2000 and early 2001, Mills discussed the installation of a dust removal system for their Mississippi factory (the "Armstrong project" or the "project") with Armstrong Wood Products, Inc. ("Armstrong"). Mills prepared B&F's bid of $588,004 and submitted it to Armstrong on 14 February 2001. In early 2001, B&F requested from each sales person a schedule of projects that the sales person anticipated would result in a contract with B&F in 2001 or 2002. Mills submitted a schedule that included the Armstrong project along with all the designs and quotes for the project. For financial reasons, Armstrong postponed the project until early 2002. On 26 December 2001, Mills resigned his position with B&F and sold his B&F stock back to B&F under a stock purchase agreement entered into between the shareholders in 1992. Approximately a week later, on 2 January 2002, Mills started his new employment with Associated performing many of the same duties he had performed at B&F. Shortly after arriving at Associated in early 2002, Mills contacted Armstrong to inquire about submitting a bid on the Armstrong project from Associated. After traveling to the Mississippi factory and producing a design based on Armstrong's specifications, Mills prepared a bid of $564,024 and submitted it to Armstrong on 25 March 2002. On 10 April 2002, Armstrong awarded the project to Associated. B&F representatives attempted to call Armstrong after Mills resigned but were unable to contact Armstrong's representative and subsequently did not update B&F's bid for the Armstrong project prior to the 10 April 2002 award.
On 13 September 2002, B&F filed suit alleging Associated, with Mills' aid, used B&F's proprietary designs, proposals, and bid procedures to bid upon and receive a contract for the Armstrong project. B&F further alleged Mills conversed with an officer or agent of Armstrong prior to resigning from B&F about awarding a contract for the Armstrong project to Associated. Based on these allegations, B&F claimed (1) defendants misappropriated its trade secrets; (2) defendants committed unfair and deceptive trade practices; (3) Mills breached his fiduciary duty to B&F; and (4) damages were sustained due to defendants' actions. On 12 April 2004, the trial court entered summary judgment for defendants on all claims. B&F appeals.
B&F asserts the trial court erred in granting summary judgment to defendants. A grant of summary judgment is reviewed de novo. Falk Integrated Techs., Inc. v. Stack, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999). Summary judgment is properly granted where, taking the evidence in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003); Bruce-Terminix Co. v. Zurich Ins. Co., 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).
Summary judgment is appropriate for the defending party when (1) an essential element of the other party's claim or defense is non-existent; (2) the other party cannot produce evidence to support an essential element of its claim or defense; or (3) the other party cannot overcome an affirmative defense which would bar the claim.
Caswell Realty Assocs. I, L.P. v. Andrews Co., 128 N.C. App. 716, 720, 496 S.E.2d 607, 611 (1998).
B&F first argues the law and the evidence support its claim that defendants misappropriated its trade secrets. "The owner of a trade secret shall have remedy by action for misappropriation of his trade secret." N.C. Gen. Stat. § 66-153 (2003). Pursuant to N.C. Gen. Stat. § 66-152 (2003),
(1) "Misappropriation" means acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret.
. . .
(3) "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
Whether the information obtained constitutes a trade secret under N.C. Gen. Stat. § 66-152(3) is the threshold question in any misappropriation of trade secrets case. Combs & Assocs., Inc. v. Kennedy, 147 N.C. App. 362, 369, 555 S.E.2d 634, 639 (2001). Six factors are considered when determining whether information is a trade secret:
(1) the extent to which the information is known outside the business;
(2) the extent to which it is known to employees and others involved in the business;
(3) the extent of measures taken to guard secrecy of the information;
(4) the value of information to business and its competitors;
(5) the amount of effort or money expended in developing the information; and
(6) the ease or difficulty with which the information could properly be acquired or duplicated by others.
State ex rel. Utilities Comm'n v. MCI, 132 N.C. App. 625, 634, 514 S.E.2d 276, 282 (1999).
Here, B&F contends its design process, cost and pricing information, bidding formulae, suppliers list, and customer list constitute trade secrets. However, B&F stated that prior to this suit it never marked any of its records as trade secrets, did not have any written policy identifying any subject, item or asset as a trade secret, and did not have any written policy dealing in any manner with the security of trade secrets. Furthermore, B&F did not patent, copyright, or trademark any of its designs, proposals, price lists, customer lists, or bid procedures and had not applied for any such protections. Moreover, B&F made its cost and pricing information, bidding process, suppliers list, and customer list readily available to its marketing and sales personnel, and B&F stated it did not have non-compete agreements or confidentiality agreements between itself and any of its officers, employees, or stockholders, including Mills. Rather, B&F stated that it "relied on the loyalty of its employees to maintain the privacy of the [company's] data." Additionally, B&F produced a public brochure containing a list of its major customers, including Armstrong, and B&F's bids did not include confidentiality clauses nor did B&F have any agreements with its customers to keep its bids confidential.
B&F also contends that its schematic drawing for the Armstrong project is a trade secret because it states the drawing and all information contained in it is exclusively the property of B&F. However, the information needed to produce a similar design is readily available to the public in a 544 page publication by the American Conference of Governmental Industrial Hygienists, "Industrial Ventilation: A Manual of Recommended Practice," which provides data and information on the design, installation, and maintenance of industrial ventilation systems. Furthermore, because Armstrong had specific requirements concerning placement of the major components of the dust removal system it wished to install, Associated's schematic for the system would by necessity have to be substantially similar to B&F's. In comparing B&F and Associated's schematics, we note Associated's design is substantially similar to B&F's but is not identical. Accordingly, we hold the items and information alleged by B&F to have been misappropriated by defendants were not trade secrets under the Trade Secrets Protection Act, and the trial court properly granted summary judgment to defendants on B&F's claim for misappropriation of trade secrets.
B&F next argues the trial court erred by granting defendants' motion for summary judgment on its claim for unfair and deceptive trade practices. Under the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (2003).
"To prevail on a claim of unfair and deceptive trade practice a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." Spartan Leasing, Inc. v. Pollard, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). "An act is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Di Frega v. Pugliese, 164 N.C. App. 499, 507, 596 S.E.2d 456, 462 (2004). Under N.C. Gen. Stat. § 75-1.1(b) (2003), "`commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." "Whether the practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace," Spartan Leasing, Inc., 101 N.C. App. at 461, 400 S.E.2d at 482, and "is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).
The UDTPA "was intended to benefit consumers, but its protections extend to businesses in appropriate situations." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 710-11 (2001) (citations omitted). Pertinent to the instant appeal, an employer may successfully seek damages against an employee "under the Act when [the] employee's conduct: (1) involved egregious activities outside the scope of his assigned employment duties, and (2) otherwise qualified as unfair or deceptive practices that were in or affecting commerce." Id., 353 N.C. at 656, 548 S.E.2d at 710. Therefore, in a suit by an employer against an employee "`some type of egregious or aggravating circumstances must be alleged and proved before the [Act's] provisions may [take effect].'"Id., 353 N.C. at 657, 548 S.E.2d at 711 (quoting Allied Distribs., Inc. v. Latrobe Brewing Co., 847 F. Supp. 376, 379 (E.D.N.C. 1993)) (emphasis in original). To the extent B&F's unfair and deceptive trade practices claim is predicated on the allegations that items and information constituting trade secrets were misappropriated by defendants, we hold the trial court properly granted summary judgment. However, we separately address that portion of B&F' sun fair and deceptive trade practices claim from the allegations of misappropriation of trade secrets.
B&F contends the following facts constitute evidence of unfair and deceptive trade practices: (1) Mills, an officer and stockholder of B&F, produced a $588,004 bid on the Armstrong project for B&F in February 2001; (2) he resigned "effective immediately" on 26 December 2001, triggering B&F's obligation to redeem his stock for $672,384; (3) on 2 January 2002, he began employment with a B&F competitor; (4) shortly thereafter he worked on a bid on the Armstrong project for his new employer; and (5) in April 2002 his new employer was awarded a contract for the project at a price approximately four percent lower than B&F's bid. We disagree.
Mills' resignation and exercise of his stock redemption was wholly within his contractual rights as an employee and stockholder of B&F. Moreover, as noted above, B&F did not have a non-compete agreement or confidentiality agreement with Mills. Therefore, Mills was free to accept employment with Associated and pursue business contracts on Associated's behalf. On these facts, we reject the proposition that it constitutes an unfair and deceptive trade practice for (1) a former employee to accept employment with a competing company and diligently work on behalf of that company or (2) a competing company to hire a former employee of its competitor and request that he diligently work on its behalf. Accordingly, B&F failed to forecast evidence indicating conduct by Mills or Associated in acquiring the contract for the Armstrong project that constituted an unfair and deceptive trade practice.
Finally, B&F argues it forecast sufficient evidence that Mills breached his fiduciary duty to the company. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." Dalton, 353 N.C. at 651, 548 S.E.2d at 707 (2001). A fiduciary relationship
has been broadly defined . . . as one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . [and] it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other."
Id., 353 N.C. at 651, 548 S.E.2d at 708-09 (quoting Abbitt v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)).
As vice-president of B&F, Mills had a fiduciary duty to the company in that B&F reposed a special confidence in him and he had influence over the company's affairs. See Pierce Concrete, Inc. v. Cannon Realty & Constr. Co., 77 N.C. App. 411, 413-14, 335 S.E.2d 30, 32 (1985) (stating, in North Carolina, the fiduciary duty of a corporate officer to a corporation "is a high one"). However, B&F failed to forecast evidence to support its allegation that Mills contacted Armstrong on behalf of Associated or took any action to undermine B&F's bid for the Armstrong project while he was employed by B&F. Indeed, Armstrong's representative stated in his affidavit that Mills did not contact Armstrong on behalf of Associated until early 2002, after Mills started employment with Associated. Mills acted against B&F's interests only after resigning his position with B&F and redeeming his B&F stock, at which time the fiduciary relationship between Mills and B&F had already ceased. B&F could no longer repose meaningful confidence in Mills. Moreover, in the absence of a non-compete or confidentiality agreement, B&F could not reasonably expect Mills to refrain from continuing in his chosen trade and contacting customers with whom he had business relationships while working for B&F. Accordingly, we hold the trial court properly granted Mills summary judgment on B&F's claim of breach of fiduciary duty.
For the foregoing reasons, we hold the trial court properly granted summary judgment to defendants on B&F's claims for misappropriation of trade secrets, unfair and deceptive trade practices, and breach of fiduciary duty. Having so held, we need not address B&F's remaining arguments.
Affirmed.
Judges TIMMONS-GOODSON and GEER concur.
Report per Rule 30(e).