HIEN NGUYEN, MATTHEW BROWN, RYAN CHILDREY, ROMAINE WATKINS, AND DAVID GREGORY, PLAINTIFFS V. JAYCEON TAYLOR, ENGEL THEDFORD, MICHAEL KIMBREW, JOHN DOE A/K/A DJ SKEE, ANTHONY TORRES, BLACK WALL STREET RECORDS, LLC, BLACK WALL STREET PUBLISHING, LLC, BUNGALO RECORDS, INC., GENERAL GFX, GRIND MUSIC, INC., JUMP OFF FILMS, LIBERATION ENTERTAINMENT, INC., JOHN DOE #2, WWW.STOPSNITCHINSTOPLYIN.COM, UNIVERSAL HOME VIDEO, INC., AND YOUTUBE, INC., DEFENDANTS

No. COA11-369

(Filed 21 February 2012)

**1. Appeal and Error—preservation of issues—failure to timely object**

Although defendant Taylor contended the trial court erred by granting summary judgment in favor of plaintiffs even though the motion was allegedly untimely, defendant waived this issue by failing to appear and object at the time the trial court considered the motion.

**2. Pleadings—failure to answer or object—requests deemed admitted**

The trial court did not err by granting summary judgment against defendant Taylor because he failed to answer or otherwise object to any of the requests. Consequently, each of plaintiffs' requests were deemed admitted, and defendant's admissions sufficiently established each element of defamation *per se*, appropriation, and unfair and deceptive practices.

1

**3. Constitutional Law—right to jury trial—waiver—failure to appear**

The trial court did not err by conducting a bench trial to determine plaintiffs' damages even though defendant Taylor specifically demanded a jury trial in his answer. Since defendant did not appear at trial, he waived his right to a jury trial.

**4. Damages and Remedies—compensatory damages—amount**

The trial court did not abuse its discretion in a defamation *per se*, appropriation, and unfair and deceptive practices case by awarding one million dollars in compensatory damages to each plaintiff police officer. Defendant Taylor's action of creating a heavily edited version of a video recording making it appear as though defendant was wrongfully arrested caused plaintiffs significant harm in their personal lives and in their careers as police officers, this harm will continue throughout the remainder of plaintiffs' careers, and defendant profited from the harm he caused plaintiffs in an amount exceeding ten million dollars.

**5. Damages and Remedies—punitive damages—aggravating factors—standard of proof**

The trial court did not abuse its discretion in a defamation *per se*, appropriation, and unfair and deceptive practices case by awarding each plaintiff two million dollars in punitive damages from defendant Taylor. However, while the trial court's judgment concluded, based upon defendant's admission, that he acted with actual malice and personal ill will toward plaintiffs, it failed to state whether this finding of an aggravating factor was by clear and convincing evidence as required by N.C.G.S. § 1D-15(b). The judgment was remanded to the trial court to consider whether the evidence of that aggravating factor met the required standard of proof, and so that the judgment could be amended to reflect its determination on this issue.

**6. Attorney Fees—unfair trade practices—sufficient findings of fact**

The trial court's judgment included sufficient findings of fact to support its conclusion of law that defendant Taylor was liable for unfair and deceptive practices, which permitted the trial court to award attorney fees under N.C.G.S. § 75-1.1.

**7. Judgments—motion to set aside entry of default—agreement for extension of time—failure to file answer**

> The trial court did not abuse its discretion by refusing to set aside entry of default against defendant Bungalo. Although defendant, due to an agreement with plaintiffs' counsel, was granted an extension of time, an answer was never filed. Further, plaintiffs then waited an additional three weeks to file a motion for entry of default.

**8. Damages and Remedies—punitive damages—improper use of co-defendants' admissions**

> The trial court erred by its punitive damages award. The trial court improperly used the admissions of defendant's co-defendants regarding profits and ability to pay to determine the amount of punitive damages to award against defendant. Defendant's failure to participate in the instant case did not relieve plaintiffs of their burden to prove their damages. Defendant was granted a new trial on the issue of punitive damages.

Appeal by defendants Jayceon Taylor and Bungalo Records, Inc. from judgment entered 20 September 2010 by Judge A. Moses Massey in Guilford County Superior Court. Heard in the Court of Appeals 11 October 2011.

*Cranfill Sumner & Hartzog LLP, by Dan M. Hartzog and Dan M. Hartzog Jr., for plaintiff-appellees.*

*Osborne Law Firm, P.C., by Curtis C. Osborne, for defendant-appellant Jayceon Taylor.*

*Blanco Tackaberry & Matamoros, P.A., by Peter J. Juran, for defendant-appellant Bungalo Records, Inc.*

CALABRIA, Judge.

Jayceon Taylor ("Taylor") and Bungalo Records, Inc. ("Bungalo") appeal the trial court's judgment which, following a bench trial, awarded five million dollars in compensatory damages and ten million dollars in punitive damages to Hien Nguyen, Matthew Brown, Ryan Childrey, Romaine Watkins, and David Gregory (collectively "plaintiffs"). We affirm in part, vacate in part, and remand.

## I. Factual and Procedural Background

The events which led to the filing of the instant case have previously been chronicled by this Court in *Nguyen v. Taylor*, 200 N.C. App. 387, 684 S.E.2d 470 (2009)(*"Nguyen I"*). The factual and procedural history relevant to the instant appeal is as follows: On 28 October 2005, plaintiffs, who were officers with the Greensboro Police Department, arrested Taylor at the Four Seasons Mall in Greensboro, North Carolina and charged him with criminal trespass, communicating threats, and disorderly conduct. An individual in Taylor's entourage recorded the arrest with a video camera. A heavily edited version of that video recording, which made it appear as though Taylor was wrongfully arrested, was included as a bonus feature on a documentary DVD released by Taylor and others, entitled "Stop Snitchin' Stop Lyin' " ("the DVD"). Bungalo was involved in the production of the DVD and also provided internet marketing services for it.

On 30 October 2006, plaintiffs filed a complaint against Taylor, Bungalo, Engel Thedford, Michael Kimbrew, DJ Skee, Anthony Torres, Black Wall Street Records, LLC, Black Wall Street Publishing, LLC, General GFX, Grind Music, Inc., Jump Off Films, Liberation Entertainment, Inc., John Doe #2, www.stopsnitchinstoplyin.com, Universal Home Video, Inc., and Youtube, Inc. The complaint included claims against Taylor, individually, for a statement he allegedly made to the news media after his arrest. It also included claims against Taylor, Bungalo, and other defendants for defamation, wrongful appropriation of a likeness, and unfair and deceptive practices. Plaintiffs' claims were based upon (1) the edited footage of Taylor's arrest contained in the DVD; (2) a description on the back of the DVD case which stated that it included the "[e]ntire footage of [Taylor] being wrongfully arrested in North Carolina; and (3) a statement on the website www.stopsnitchinstoplyin.com which referred to the video of the arrest as the "[e]ntire footage of [Taylor] being wrongfully arrested and brutalized by the Police in North Carolina."

Bungalo was served with plaintiffs' complaint on 10 November 2006. Bungalo's counsel then contacted plaintiffs' counsel, who agreed to extend the time to file a responsive pleading until 2 January 2007. However, Bungalo failed to file an answer. As a result, plaintiffs filed a motion for default on 23 January 2007, and on 24 January 2007, default was entered against Bungalo by the Guilford County Clerk of Superior Court. On 30 January 2007, Bungalo's counsel contacted plaintiffs' counsel in an attempt to have the default set aside, but

plaintiffs' counsel refused. On 21 March 2007, Bungalo filed a motion to have the default set aside, and the motion was denied by Judge Edwin G. Wilson, Jr. on 21 May 2007. On 30 November 2007, plaintiffs sent discovery requests to Bungalo, but Bungalo refused to comply with the requests on the basis of the default.

On 18 June 2008, Taylor and other defendants filed a motion to dismiss all of plaintiffs' claims pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. On 5 August 2008, the trial court entered an order which granted defendants' motion in part and denied it in part. After the entry of this order, the remaining claims against Taylor were (1) defamation, based upon the edited footage contained in the DVD; (2) appropriation; and (3) unfair and deceptive practices. Plaintiffs appealed the trial court's order. On 20 October 2009, this Court, in *Nguyen* I, dismissed plaintiffs' appeal as interlocutory.

While plaintiffs' appeal was pending, the trial court entered a stay of all proceedings. On 18 December 2009, plaintiffs sent Taylor "Requests for Admission," and Taylor did not respond as required by N.C. Gen. Stat. § 1A-1, Rule 36 (2011).

Plaintiffs voluntarily dismissed, without prejudice, their claims against Universal Home Video, Inc., and Youtube, Inc. In addition, plaintiffs reached a settlement and voluntarily dismissed their claims against DJ Skee.

The case was set for trial on 13 September 2010. On 23 August 2010, plaintiffs moved for summary judgment against Taylor on the basis of his failure to respond to the requests for admission. The motion was heard on the day of trial. Taylor did not appear. The trial court entered summary judgment against Taylor and proceeded to trial on the issue of damages.

The bench trial on damages was conducted on 14 September 2010. At trial, each plaintiff testified regarding the negative effects of the DVD. They testified that people consistently recognized them as a result of appearing in the DVD and explained the problems this created. These included, *inter alia*, problems with their jobs and their fear for their own safety and for the safety of their families. On 20 September 2010, the trial court entered a judgment in favor of plaintiffs against Taylor, Bungalo, Engel Thedford, Michael Kimbrew, Anthony Torres, Black Wall Street Records, LLC, Black Wall Street Publishing, LLC, General GFX, Grind Music, Inc., and Jump Off Films. Plaintiffs were each awarded one million dollars in compensatory

damages and two million dollars in punitive damages. The defendants involved in this judgment were jointly and severally liable for the damages awarded.

Plaintiffs subsequently voluntarily dismissed, without prejudice, their claims against the defendants who remained after the 20 September 2010 judgment: John Doe #2, www.stopsnitchinstoplyin.com, and Liberation Entertainment, Inc.

Taylor and Bungalo were the only defendants to file notice of appeal.

## II. Jaceyon Taylor

Taylor raises numerous issues on appeal. He argues: (1) that the trial court erred by holding a summary judgment hearing on the day of trial; (2) that the trial court erred by granting summary judgment to plaintiffs against Taylor; (3) that the trial court erred by conducting a bench trial to determine damages, when Taylor had demanded a jury trial; (4) that the trial court erred by relying upon unanswered requests for admission to determine plaintiffs' damages; (5) that the trial court's findings were insufficient to support its verdict, because the findings did not indicate which tort gave rise to which damages; (6) that the trial court erred in awarding five million dollars in compensatory damages to plaintiffs, as these damages were not supported by competent evidence; (7) that the trial court erred in awarding punitive damages; and (8) that the trial court erred by awarding plaintiffs attorneys' fees.

### A. Timing of Summary Judgment Motion

**[1]** Taylor first argues that the trial court erred in granting summary judgment to plaintiffs because plaintiffs' summary judgment motion was untimely. Specifically, Taylor contends that plaintiffs failed to comply with a pretrial administrative scheduling order entered in the case that required plaintiffs to file their motion 14 days prior to trial. We disagree.

Although Taylor was properly served with plaintiffs' motion,[1] he failed to appear at the summary judgment hearing. Since he was not in court, he did not object at the time the trial court considered the motion. Accordingly, he has waived appellate review of this issue. *See*

---

1. The parties have stipulated that "[a]ll documents included [in the record on appeal] were properly filed and served." This includes plaintiffs' summary judgment motion.

N.C.R. App. P. 10(a)(1) (2011)("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). This argument is overruled.

### B. Evidence Supporting Summary Judgment

**[2]** Taylor next argues that there was insufficient evidence to support the trial court's entry of summary judgment against him. We disagree.

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2011). In the instant case, the trial court properly relied upon Taylor's admissions in granting summary judgment to plaintiffs. Plaintiffs sent Taylor requests for admission pursuant to N.C. Gen. Stat. § 1A-1, Rule 36 (2011). This rule provides, in relevant part:

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 60 days after service of the summons and complaint upon him.

N.C. Gen. Stat. § 1A-1, Rule 36(a). After Taylor was served with plaintiffs' requests for admission,[2] he failed to answer or otherwise object to any of the requests. Consequently, each of plaintiffs' requests were deemed admitted.

Our Supreme Court has stated that "[f]acts that are admitted under Rule 36(b) are sufficient to support a grant of summary judg-

---

2. Taylor has not stipulated that plaintiffs' "Requests for Admission" were properly served. However, the requests were attached to plaintiffs' motion for summary judgment, which Taylor stipulated was properly served. As noted above, Taylor did not respond to the summary judgment motion and filed no objections to the requests for admission in response to that motion.

ment." *Goins v. Puleo*, 350 N.C. 277, 280, 512 S.E.2d 748, 750 (1999). In the instant case, Taylor's admissions sufficiently established each element of defamation *per se*, appropriation, and unfair and deceptive practices.

### 1. Defamation *Per Se*

In general, "[t]o be actionable, a defamatory statement must be false and must be communicated to a person or persons other than the person defamed." *Andrews v. Elliot*, 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993). Moreover,

> North Carolina has long recognized the harm that can result from false statements that impeach a person in that person's trade or profession — such statements are deemed defamation *per se*. The mere saying or writing of the words is presumed to cause injury to the subject; there is no need to prove any actual injury.

*Cohen v. McLawhorn*, ____ N.C. App. ____, ____, 704 S.E.2d 519, 527 (2010)(internal quotations and citations omitted). In the instant case, Taylor admitted that the DVD was edited to give the impression that he did nothing wrong during his arrest, in an attempt to defame plaintiffs. Taylor additionally admitted that the edited footage "was intentionally misleading" and that he intended to "characterize the Plaintiffs' actions [in arresting him] as illegal" even though he "knew the Plaintiffs' actions were legal." Finally, Taylor admitted that he intended to "defame the Plaintiffs with the DVD," and that he intended to "injure the Plaintiffs in their trades or professions." Based upon these admissions, the trial court properly granted summary judgment to plaintiffs on their defamation *per se* claim.

### 2. Appropriation

North Carolina recognizes a claim for invasion of privacy by means of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness[.]" *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 322, 312 S.E.2d 405, 411 (1984). In the instant case, Taylor admitted that he appropriated plaintiffs' likenesses for his own advantage. As a result, the trial court properly granted plaintiffs summary judgment on their appropriation claim against Taylor.

### 3. Unfair or Deceptive Practices

"The elements of a claim for unfair or deceptive [] practices in violation of N.C. Gen. Stat. § 75-1.1 (2003) are: (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff or to his business." *RD&J Props. v. Lauralea-Dilton Enters.*, LLC, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). In the instant case, Taylor admitted that the DVD "was commercially released for worldwide distribution" and that he was "involved in all aspects of the filming, editing, directing, producing, and financing, and distribution of the DVD." He also admitted that he "ma[de] [plaintiffs] unwitting performers in [his] commercial DVD" and "defam[ed] [plaintiffs] while profiting at their expense." In addition, he admitted that the use of plaintiffs in the DVD directly increased the DVD sales. Based upon these admissions, the trial court properly granted plaintiffs summary judgment against Taylor on their unfair and deceptive practices claim.

Taylor's admissions were sufficient to establish each of plaintiffs' claims against him. Accordingly, the trial court did not err in granting plaintiffs summary judgment against Taylor on their claims for defamation *per se*, appropriation, and unfair and deceptive practices. This argument is overruled.

### C. Demand for Jury Trial

**[3]** Taylor argues that the trial court erred by conducting a bench trial to determine plaintiffs' damages when Taylor specifically demanded a jury trial in his answer. However, "[a] party may waive his right to jury trial by . . . failing to appear at the trial[.]" *Carolina Forest Ass'n v. White*, 198 N.C. App. 1, 16, 678 S.E.2d 725, 735 (2009). Since Taylor did not appear at trial, he waived his right to a jury trial. This argument is overruled.

### D. Compensatory Damages

**[4]** Taylor argues that, for a variety of reasons, the trial court's award of compensatory damages was erroneous. We disagree.

### 1. Division of Damages

Taylor first argues that the trial court's judgment was inherently deficient because it failed to specify which portion of its damages award was attributable to each of plaintiffs' claims. However, Taylor fails to cite any authority in support of this argument, and so it is deemed abandoned pursuant to N.C.R. App. P. 28 (b)(6) (2011).

**NGUYEN v. TAYLOR**

[219 N.C. App. 1 (2012)]

### 2. Use of Admissions

Taylor also contends that the trial court erred by using Taylor's admissions to make its findings of fact. As previously noted, Taylor failed to respond to plaintiffs' requests for admission, and as a result, all of plaintiffs' requests were deemed admitted under N.C. Gen. Stat. § 1A-1, Rule 36(a). "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." N.C. Gen. Stat. § 1A-1, Rule 36(b). This Court has explained that an admission under Rule 36 "is not evidence, but it, instead, serves to remove the admitted fact from the trial by formally conceding its existence." *J.M. Parker & Sons, Inc. v. William Barber, Inc.*, ____ N.C. App. ____, ____, 704 S.E.2d 64, 69 (2010) (internal quotations and citation omitted).

In the instant case, plaintiffs entered Taylor's admissions into evidence during the damages trial. Consequently, the admissions were conclusively established facts for purposes of that trial. Thus, the trial court did not err by making findings of fact based upon Taylor's admissions. This argument is overruled.

### 3. Award of Consequential Damages

Taylor next contends that there was insufficient evidence to support the trial court's award of one million dollars in compensatory damages per plaintiff. "The burden of proving damages is on the party seeking them. As part of its burden, the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 547-48, 356 S.E.2d 578, 586 (1987) (internal citation omitted). In the instant case, Taylor was found liable for defamation *per se*, appropriation, and unfair and deceptive practices.

For a defamation claim, "[c]ompensatory damages include (1) pecuniary loss direct or indirect, *i.e.*, special damages; (2) damages for physical pain and inconvenience; (3) damages for mental suffering; and (4) damages for injury to reputation." *Roth v. News Co.*, 217 N.C. 13, 23, 6 S.E.2d 882, 889 (1940)(internal quotations and citations omitted). While our Courts have not precisely defined the measure of damages for an appropriation claim, the Restatement (Second) of Torts identifies the following types of damages for all invasion of privacy actions:

(a)  the harm to [the plaintiff's] interest in privacy resulting from the invasion;

(b)  [the plaintiff's] mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and

(c)  special damage of which the invasion is a legal cause.

Restatement (Second) of Torts, § 652H. For the harm specific to the tort of appropriation, the Restatement notes that "[o]ne whose name, likeness or identity is appropriated to the use of another . . . may recover for the loss of the exclusive use of the value so appropriated." *Id.*, cmt. (a).[3] Finally, for an unfair or deceptive practices claim, this Court has stated:

> Unfair and deceptive trade practices and unfair competition claims are neither wholly tortious nor wholly contractual in nature and the measure of damages is broader than common law actions. The measure of damages used should further the purpose of awarding damages, which is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.

*Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 562, 643 S.E.2d 410, 429 (2007)(internal quotations and citations omitted).

The damages in the instant case were awarded after a bench trial. "In a bench trial in which the [trial] court sits without a jury, the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Hinnant v. Philips*, 184 N.C. App. 241, 245, 645 S.E.2d 867, 870 (2007) (internal quotations and citation omitted). "The trial court's award of damages at a bench trial is a matter within its sound discretion, and will not be disturbed on appeal absent an abuse of discretion." *Helms v. Schultze*, 161 N.C. App. 404, 414, 588 S.E.2d 524, 530 (2003).

The trial court made the following relevant findings of fact regarding plaintiffs' damages:

> 37. As a result of Defendants' actions, Plaintiffs have been substantially injured. The Plaintiffs are consistently recognized as

---

3. The Restatement also notes that for the second and third types of damages, an invasion of privacy action closely parallels a defamation action. *See* Restatement (Second) of Torts, § 652H, cmts. (b) & (d).

being the officers who arrested [Taylor]. They are often accused of racism by those who recognize them as a result of the DVD, which undermines their authority as police officers. They have legitimate fears for their own safety, as well as for the safety of their families.

39. The DVD and the statements made by the Defendants continue to be widely available across the world, and the footage remains readily available on the internet. As a result, it is likely that the Plaintiffs will continue to be damaged by these materials wherever they go and for the remainder of their careers.

Taylor did not challenge these findings, and thus, they are binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). In addition, based upon Taylor's admissions, the trial court found that "Taylor . . . made in excess of TEN MILLION DOLLARS ($10,000,000.00) in profits on the sale of the DVD, the vast majority of which [he] attribute[d] to the use of Plaintiffs' likeness[es] and the defamatory statements." Thus, the trial court's binding findings of fact are that Taylor's actions have caused plaintiffs significant harm in their personal lives and in their careers as police officers, that this harm will continue throughout the remainder of plaintiffs' careers, and that Taylor profited from the harm he caused plaintiffs in an amount exceeding ten million dollars. In light of these findings, we cannot say the trial court abused its discretion by awarding each plaintiff one million dollars in compensatory damages. This argument is overruled.

E.  Punitive Damages

[5]  Taylor next argues that the trial court erred in awarding each plaintiff two million dollars in punitive damages.

Under N.C. Gen. Stat. § 1D-15(a) (2009), "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud[;] (2) Malice[; or] (3) Willful or wanton conduct." The plaintiff "must prove the existence of an aggravating factor by clear and convincing evidence." N.C. Gen. Stat. § 1D-15(b).

*Springs v. City of Charlotte*, \_\_\_\_ N.C. App. \_\_\_\_, \_\_\_\_, 704 S.E.2d 319, 325-26 (2011). In the instant case, Taylor admitted that he "had personal ill-will and malice towards each of the Plaintiffs in this

action and that this ill-will and malice motivated [his] actions." Pursuant to N.C. Gen. Stat. § 1A-1, Rule 36(b), Taylor's admission conclusively established and formally conceded the existence of an aggravating factor. *J.M. Parker & Sons*, _____ N.C. App. at _____, 704 S.E.2d at 69.

However, while the trial court's judgment concluded, based upon Taylor's admission, that he "acted with actual malice and personal ill will towards the Plaintiffs," it failed to state whether this finding of an aggravating factor was by "clear and convincing evidence," as required by N.C. Gen. Stat. § 1D-15(b). As a result, we must remand the judgment to the trial court so that it may consider whether the evidence of that aggravating factor met the required standard of proof, and so that the judgment may be amended to reflect its determination on this issue.

Taylor additionally contends that, even if punitive damages were appropriate, the amount of punitive damages awarded by the trial court constituted an abuse of discretion.

> In determining the amount of punitive damages, if any, to be awarded, the trier of fact:
>
> (1) Shall consider the purposes of punitive damages set forth in G.S. 1D-1; and
>
> (2) May consider only that evidence that relates to the following:
>
> a. The reprehensibility of the defendant's motives and conduct.
>
> b. The likelihood, at the relevant time, of serious harm.
>
> c. The degree of the defendant's awareness of the probable consequences of its conduct.
>
> d. The duration of the defendant's conduct.
>
> e. The actual damages suffered by the claimant.
>
> f. Any concealment by the defendant of the facts or consequences of its conduct.
>
> g. The existence and frequency of any similar past conduct by the defendant.
>
> h. Whether the defendant profited from the conduct.
>
> i. The defendant's ability to pay punitive damages, as evidenced by its revenues or net worth.

N.C. Gen. Stat. § 1D-35 (2011). In the instant case, the trial court's judgment specifically indicated that it had considered the purpose of punitive damages. In addition, the judgment concluded that "Defendants' conduct and motives . . . were reprehensible," that "the Defendants either were or should have been aware of the likelihood of serious harm to the Plaintiffs," and that "the Defendants made in excess of FORTY MILLION DOLLARS ($40,000,000) from the DVD, and have the ability to pay the punitive damages awarded."[4] Thus, the trial court's judgment complied with N.C. Gen. Stat. § 1D-35 in determining the punitive damages award, and we find no abuse of discretion in the amount awarded. This argument is overruled.

### F.  Attorneys' Fees

[6] Finally, Taylor argues that the trial court erred in awarding plaintiffs attorneys' fees. Specifically, Taylor contends that there are no findings included in the trial court's judgment that Taylor's actions affected commerce, and without these findings the judgment failed to establish Taylor's liability for unfair or deceptive practices. Contrary to Taylor's assertion, the trial court specifically found as fact that the DVD which defamed plaintiffs was commercially released. The trial court's judgment included sufficient findings of fact to support its conclusion of law that Taylor was liable for unfair and deceptive practices, which permitted the trial court to award attorneys' fees under N.C. Gen. Stat. § 75-1.1 (2011). This argument is overruled.

### III.  Bungalo Records, Inc.

Bungalo raises two issues on appeal. First, Bungalo argues that the trial court erred by denying Bungalo's motion to set aside the entry of default. Second, Bungalo argues that the trial court erred by awarding plaintiffs a fifteen millon dollar judgment against Bungalo.

### A.  Entry of Default

[7] Bungalo contends that the trial court abused its discretion by refusing to set aside the entry of default. We disagree.

An entry of default may be set aside for 'good cause shown. *Williams v. Jennette*, 77 N.C. App. 283, 287, 335 S.E.2d 191, 194 (1985). "Whether 'good cause' exists depends on the facts and circumstances of each particular case, and the trial court's determination will not be disturbed on appeal unless a clear abuse of discretion is shown." *Old*

---

4. Defendants Black Wall Street Records, LLC, Black Wall Street Publishing, LLC, and Jump Off Films each admitted that they, like Taylor, made in excess of ten million dollars in profits from the DVD.

*Salem Foreign Car Serv., Inc. v. Webb*, 159 N.C. App. 93, 97, 582 S.E.2d 673, 676 (2003). "The defendant carries the burden of showing good cause to set aside entry of default." *Luke v. Omega Consulting Grp., LC*, 194 N.C. App. 745, 748, 670 S.E.2d 604, 607 (2009).

In its brief, Bungalo contends that its "failure to answer was inadvertent, due to a conversation in which [Bungalo's counsel] mistakenly believed that Plaintiffs' counsel agreed to an extension of time in which to file an answer." However, the conversation referenced by Bungalo did not occur until 30 January 2007, after default had been entered. Thus, this conversation could not provide a basis for setting aside the default.

Bungalo was served with plaintiffs' complaint on 10 November 2006. Under the Rules of Civil Procedure, an answer is due within 30 days of service of a complaint. *See* N.C. Gen. Stat. § 1A-1, Rule 12(a)(1) (2011). Although Bungalo, due to an agreement with plaintiffs' counsel, was granted an extension of time until 2 January 2007, an answer was never filed. Plaintiffs then waited an additional three weeks, until 23 January 2007, to file a motion for entry of default. Thereafter, Bungalo did not file its motion to set aside the default until 21 March 2007. Under these circumstances, we find no abuse of discretion in the trial court's denial of Bungalo's motion to set aside default. This argument is overruled.

## B. Judgment

[8] Bungalo argues that the evidence presented at the damages trial did not support an award of fifteen million dollars in compensatory and punitive damages against Bungalo. We agree that the punitive damages award against Bungalo was improper, and grant Bungalo a new trial on the issue of punitive damages.

### 1. Bungalo's Liability

Bungalo first argues that because it was not mentioned by name during the evidentiary portion of the damages trial, plaintiffs failed to establish that Bungalo's actions were the proximate cause of their damages. We disagree.

"The effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint and is prohibited from defending on the merits of the case." *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460, 400 S.E.2d 476, 482 (1991)(internal citation omitted). Thus,

as a result of the entry of default against Bungalo, all of plaintiffs' allegations against Bungalo were deemed to have been admitted. These included allegations that Bungalo was involved in the production and distribution of the DVD which caused the harm to plaintiffs.

The sole purpose of the damages trial was to determine the harm to plaintiffs caused by the production and distribution of the DVD. Since Bungalo admitted, by virtue of its default, its involvement in this process, any damages proven at the trial would be attributable to Bungalo as well as the other defendants who were also involved with the DVD. The fact that Bungalo was not mentioned specifically by name during the damages trial did not affect its responsibility for the amount of damages that were established at the damages trial. All of the defendants who were involved with the DVD, including Bungalo, proximately caused plaintiffs' damages. This argument is overruled.

### 2.  Disclaimer on DVD

Bungalo next argues that the trial court abused its discretion by failing to reduce the amount of plaintiffs' damages attributable to Bungalo. Specifically, Bungalo contends that a disclaimer mentioned on the DVD, which stated that Bungalo "disclaims all liability of any kind arising out of the content, comments, and the information contained and referenced within the DVD," should have reduced the amount of its liability for plaintiffs' damages.

Once default was entered against Bungalo, it had "no further standing to contest the merits of plaintiff[s'] right to recover. [Its] only recourse [wa]s . . . to contest the amount of the recovery." *Spartan Leasing*, 101 N.C. App. at 460, 400 S.E.2d at 482. Contrary to Bungalo's assertions to the contrary, the disclaimer is relevant only to the merits of plaintiffs' claims against Bungalo; it does not affect the amount of plaintiffs' damages which were attributable to the DVD. This argument is overruled.

### 3. Rule 9(k)

Bungalo argues that plaintiffs' complaint was legally insufficient to support an award of punitive damages because it did not comply with N.C. Gen. Stat. § 1A-1, Rule 9(k) (2011). This rule requires, *inter alia*, that "the aggravating factor that supports the award of punitive damages shall be averred with particularity." *Id.*

In the instant case, plaintiffs' complaint does not specifically allege malice as an aggravating factor supporting the award of punitive damages. However, this Court has previously held that a com-

plaint which included an allegation of defamation *per se,* together with an allegation that the defendant made a statement "with knowledge that the statement was false," and a demand for punitive damages, met the Rule 9(k) particularity requirement. *Ausley v. Bishop,* 150 N.C. App. 56, 64-65, 564 S.E.2d 252, 258, *rev'd on other grounds,* 356 N.C. 422, 572 S.E.2d 153 (2002)(per curiam). The allegations in plaintiffs' complaint cannot be materially distinguished from the complaint in *Ausley.* Accordingly, plaintiffs' complaint sufficiently complied with the requirements of Rule 9(k). This argument is overruled.

### 4. Punitive Damages

Finally, Bungalo argues that the evidence presented at the damages trial was insufficient to support an award of punitive damages. As previously noted, the trial court's judgment indicates that it awarded punitive damages because (1) "Defendants' conduct and motives . . . were reprehensible;" (2) "the Defendants either were or should have been aware of the likelihood of serious harm to the Plaintiffs;" and (3) "the Defendants made in excess of FORTY MILLION DOLLARS ($40,000,000) from the DVD, and have the ability to pay the punitive damages awarded."

The allegations in plaintiffs' complaint, which were deemed admitted as a consequence of Bungalo's default, supported the first two factors considered by the trial court. However, the trial court improperly considered evidence of Bungalo's co-defendants' profits and ability to pay punitive damages when it awarded punitive damages against Bungalo. The trial court's conclusion that defendants made in excess of forty million dollars from the DVD was based solely upon the admissions of Taylor, Black Wall Street Records, LLC, Black Wall Street Publishing, LLC, and Jump Off Films. This Court has long held that "[f]acts admitted by one defendant are not binding on a co-defendant." *Barclays American v. Haywood,* 65 N.C. App. 387, 389, 308 S.E.2d 921, 923 (1983). Thus, the trial court improperly used the admissions of Bungalo's co-defendants to determine the amount of punitive damages to award against Bungalo.

Moreover, under N.C. Gen. Stat. § 1D-35(2), the trier of fact "[m]ay consider *only* that evidence that relates to[,]" *inter alia,* "[w]hether *the defendant profited* from the conduct" and "*[t]he defendant's ability to pay punitive damages,* as evidenced by its revenues or net worth." (Emphasis added). This statute does not permit the trier of fact to solely consider the co-defendants' profits and ability to

pay when awarding punitive damages against a particular defendant. Since the trial court's judgment reflects that this is precisely what occurred in the instant case, we must vacate the portion of the judgment awarding punitive damages against Bungalo and remand for a new trial on that issue.

Plaintiffs concede that they presented no evidence of Bungalo's profits or its ability to pay punitive damages. They attribute this failure to Bungalo's "refus[al] to provide information requested in discovery about its ability to pay" and Bungalo's "refusal to participate in the lawsuit." However, Bungalo's failure to participate in the instant case does not relieve plaintiffs of their burden to prove their damages. The Rules of Civil Procedure provide the appropriate methods and remedies by which to address Bungalo's failure to provide any required discovery materials. These remedies do not include allowing the trier of fact to assume facts which are not presented as evidence. On remand, plaintiffs are free to utilize the relevant discovery rules to obtain the information they seek.

## IV. Conclusion

By failing to appear, Taylor waived his ability to contest the timing of the summary judgment hearing and waived his right to a jury trial on damages. The trial court properly granted plaintiffs summary judgment against Taylor for their claims of defamation *per se*, appropriation, and unfair or deceptive practices. At the damages trial, the court properly considered unanswered requests for admissions. By operation of Rule 36 these requests became conclusively established facts. The trial court's findings of fact were based upon competent evidence and supported its conclusions of law, which in turn supported its award of compensatory damages against Taylor. However, the trial court's finding regarding the aggravating factor which supported the award of punitive damages against Taylor failed to indicate that the aggravating factor was established by clear and convincing evidence. We remand the judgment to the trial court so that it may consider whether the evidence of that aggravating factor met the required standard of proof and then amend the judgment to reflect its determination. Nevertheless, assuming an award of punitive damages was proper, the amount of punitive damages awarded did not constitute an abuse of discretion. Finally, the trial court's findings of fact and conclusions of law established Taylor's liability for unfair or deceptive practices, and thus, supported the trial court's award of attorneys' fees.

The trial court did not abuse its discretion in refusing to set aside Bungalo's default. The entry of default against Bungalo and the evidence provided by plaintiffs at the damages trial established that Bungalo proximately caused their damages. The trial court did not abuse its discretion in awarding plaintiffs one million dollars each in compensatory damages against Bungalo.

Plaintiffs' complaint contained sufficient allegations to comply with the requirements of Rule 9(k) and permitted the trial court to award plaintiffs punitive damages. However, the trial court erred by considering only evidence of Bungalo's co-defendants' profits and ability to pay when determining the amount of punitive damages owed by Bungalo. As a result, the portion of the trial court's judgment which awarded punitive damages against Bungalo is vacated and the case is remanded for a new trial solely on that issue.

Affirmed in part, vacated in part, and remanded.

Judges McGEE and HUNTER, Robert C. concur.